**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**NOV 18 2002**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

Z. J. GIFTS D-4, L.L.C., a Colorado
Limited Liability Company, doing
business as Christal's,

      Plaintiff - Appellant,

v.

CITY OF LITTLETON, an Incorporated
Home Rule Municipal Corporation,

      Defendant - Appellee.

No. 01-1220

---

**Appeal from the United States District Court**
**for the District of Colorado**
**(D.C. No. 99-N-1696)**

---

Michael W. Gross (Arthur M. Schwartz with him on the briefs) of Schwartz &
Goldberg, P.C., Denver, Colorado for the Plaintiff-Appellant.

J. Andrew Nathan (Heidi J. Hugdahl with him on the brief) of Nathan, Bremer,
Dumm & Myers, P.C., Denver, Colorado for the Defendant-Appellee.

---

Before **BRISCOE**, Circuit Judge, **BRORBY**, Senior Circuit Judge, and
**LUCERO**, Circuit Judge.

---

**LUCERO**, Circuit Judge.

This case raises several First Amendment issues, including one in which the circuits are substantially divided: namely, the extent to which prompt judicial review must be assured in adult-business licensing cases. Plaintiff Z.J. Gifts D-4, L.L.C. ("ZJ") brought an action under 42 U.S.C. § 1983 challenging the City of Littleton's ("City's" or "Littleton's") adult business ordinance as unconstitutional, seeking declaratory and injunctive relief, attorney's fees, and damages. The district court granted summary judgment to the City. We have jurisdiction under 28 U.S.C. § 1291, and we reverse in part and affirm in part.

**I**

In 1993, the City passed an ordinance requiring businesses that specialize in adult entertainment or merchandise to obtain licenses, and restricting those businesses to certain areas of Littleton. Before passing its ordinance, the City Council heard testimony and reviewed reports from other cities concerning deleterious effects of adult businesses on property values and on crime rates.

In the fall of 1999, ZJ opened its store, known as Christal's, on South Broadway in Littleton. Prior to the opening of Christal's, the City informed the owner of the property on which Christal's was located that adult businesses were not permitted at this South Broadway location. In late August 1999—shortly before Christal's opened—ZJ filed a § 1983 suit against the City seeking monetary, declaratory, and injunctive relief. ZJ's complaint alleged that

Littleton's ordinance was unconstitutional because, among other things, it infringed ZJ's First Amendment rights. ZJ also alleged that it did not intend to operate an "adult business establishment" as defined in Littleton's ordinance. (1 Appellant's App. at 11.)

On cross-motions for summary judgment, the district court ruled in favor of the City, concluding that ZJ was covered by Littleton's ordinance and that the ordinance was, in its entirety, constitutional. After the district court's decision in this case and during the briefing for this appeal, the City amended its ordinance, clarifying certain corporate disclosure requirements and changing an age restriction for adult businesses that do not offer live entertainment. Littleton, Colo., Ordinance 13 (2001) (codified at Littleton, Colo., City Code § 3-14-2, -5, -8, -16 (2002)).

## II

Both as originally enacted and as amended, Littleton's ordinance has two primary functions: (1) it requires all adult businesses within Littleton to obtain licenses to operate within the City's borders, and (2) it restricts those businesses to certain sections of the City and requires that they not locate within a minimum distance of other specified sites.

Among the adult businesses covered by Littleton's ordinance, Christal's would most likely qualify as an "adult bookstore, adult novelty store, or adult

video store." Littleton, Colo., City Code § 3-14-2. A commercial establishment falls into this category if, as judged by percentage of stock-in-trade, revenue, or advertising, it is primarily devoted to the sale of materials that are characterized by the depiction or description of "specified sexual activities" or "specified anatomical areas," regardless of whether the establishment has other business purposes. Id. "Specified anatomical areas" are further defined as: "(A) Less than completely and opaquely covered human genitals, pubic region, buttocks, anus or female breasts below a point immediately above the top of the areolae; or (B) Human male genitals in a discernibly turgid state, even if completely and opaquely covered." Id. "Specified sexual activities" are defined to include masturbation, fondling of the genitals and other specified areas, excretory functions, human genitals in a state of "sexual stimulation, arousal or tumescence," and "normal or perverted" sex acts. Id.

No adult business covered by Littleton's ordinance may operate within five-hundred feet of a church, school, child-care facility, public park, massage parlor regulated by local ordinances, or community correctional facility. Id. § 3-14-3. Adult businesses also may not operate within one-thousand feet of each other or a massage parlor regulated by state law. Id. In addition, multiple adult businesses may not operate within the same structure. Id.

- 4 -

Under Littleton's ordinance, operation of an adult business within the City requires a license. Among other things, a license application must indicate or provide: names of all owners, managers, and employees of the business; information about whether the applicant has had an adult-business license denied, revoked, or suspended by any jurisdiction; an indication whether the applicant has adult-business licenses from other jurisdictions; the address, driver's license number, and social security number of the applicant and all owners, managers, and employees; a floor plan for the proposed business; a written statement by the City's Zoning Officer that the proposed location is in compliance with the ordinance; and a statement of whether an owner, manager, or employee of the business has been convicted of specified criminal acts.[1] Id. § 3-14-5. Certain specified persons must also be fingerprinted and photographed by the Police Department. Id.

After an application has been submitted, the City Clerk has thirty days to approve or deny the license. Id. § 3-14-8. The Clerk may deny an application for one or more specified reasons, including: the applicant is under twenty-one years old; the applicant has made a false statement on the application; the applicant or any owner has had an adult-business license revoked or suspended within

_____

[1] In amending its ordinance in 2001, the City added more specific corporate disclosure requirements, but did not significantly alter the key provisions. Littleton, Colo., Ordinance 13 (2001).

- 5 -

Colorado in the past year; the applicant has operated an adult business deemed to be a public nuisance in the past year; a corporate applicant is not in good standing or authorized to conduct business in Colorado; the applicant is overdue in any city taxes, fees, fines, or penalties assessed in relation to an adult business; the applicant has failed to obtain the required sales-tax license; or the applicant has been convicted of specified criminal acts. Id. Specified criminal acts for the purposes of the ordinance are defined as: "Sexual crimes against children, sexual abuse, rape or crimes connected with another adult business, including distribution of obscenity, prostitution, pandering or tax violation." Id. § 3-14-2.

If the clerk denies the application, the applicant then has twenty days to appeal the denial to the City Manager,[2] who must hold a hearing within thirty days. Id. § 3-14-8. If that appeal is denied, the applicant may seek review in state court pursuant to Colorado Rule of Civil Procedure 106(a)(4). Id.

Licenses are issued for one-year terms and may be renewed only by filing a renewal application. Id. §§ 3-14-9, -10. Licenses may be suspended for one or more specified grounds. Id. § 3-14-11. Suspension or revocation may only occur after a hearing before the City Manager and may be appealed to state court. Id. Finally, under the amended ordinance, all adult businesses in Littleton that do not

---

[2] This is the time limit under the amended ordinance. Before the amendments, the ordinance gave the applicant only ten days to request a hearing before the City Manager. Littleton, Colo., Ordinance 27 (1993).

provide live entertainment are required to restrict entrance to individuals who are eighteen or older.[3]  Id. § 3-14-16.

## III

We initially determine whether there is an Article III case or controversy before us.  Essence, Inc. v. City of Fed. Heights, 285 F.3d 1272, 1280 (10th Cir. 2002).  Standing is an essential part of the case-or-controversy requirement of Article III.  Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992).  There are three elements to Article III standing:  (1) injury-in-fact, (2) causation, and (3) redressability.  Essence, 285 F.3d at 1280.  An injury-in-fact is an "'invasion of a legally protected interest' that is (a) concrete and particularized and (b) actual or imminent, i.e., not conjectural or hypothetical."  Id. (quoting Defenders of Wildlife, 504 U.S. at 560).  Causation requires a showing that the injury is "'fairly trace[able] to the challenged action of the defendant,' rather than some third party not before the court."  Id. (quoting Defenders of Wildlife, 504 U.S. at 560).  Redressability means that it is "likely that a favorable court decision will redress the injury of the plaintiff."  Id.  "The burden to establish standing rests on the party invoking federal jurisdiction."  Id.  When the case has been resolved in the district court on summary judgment grounds, "'a plaintiff must establish that

---

[3]  Under the original ordinance, admission to all adult businesses was limited to persons over twenty-one.  Littleton, Colo., Ordinance 27 (1993).

there exists no genuine issue of material fact as to justiciability,' and 'mere allegations' of injury, causation, and redressability are insufficient." Id. (quoting Dep't of Commerce v. United States House of Representatives, 525 U.S. 316, 329 (1999)).

**A**

Standing usually requires that the plaintiff assert an injury to himself, rather than injuries to third parties not before the court. However, this rule is not strictly enforced in the context of facial challenges to laws as violative of the First Amendment, even though a facial challenge to the validity of a statute necessarily entails a challenge to the statute as applied to third parties besides the plaintiff:

> In the area of freedom of expression it is well established that one has standing to challenge a statute on the ground that it delegates overly broad licensing discretion to an administrative office, whether or not his conduct could be proscribed by a properly drawn statute, and whether or not he applied for a license.

Freedman v. Maryland, 380 U.S. 51, 56 (1965); see also FW/PBS, Inc. v. City of Dallas, 493 U.S. 215, 223 (1990) (opinion of O'Connor, J.) ("Although facial challenges to legislation are generally disfavored, they have been permitted in the First Amendment context where the licensing scheme vests unbridled discretion in the decisionmaker and where the regulation is challenged as overbroad."). "A form of unbridled discretion is the failure to place brief, specific time limits on

the decision-making process." Nightclubs, Inc. v. City of Paducah, 202 F.3d 884, 889 (6th Cir. 2000); see also FW/PBS, 493 U.S. at 223–24 (opinion of O'Connor, J.) (stating that unbridled discretion includes licensing schemes that create a "'risk of delay' such that 'every application of the statute creates an impermissible risk of suppression of ideas'" (quotations omitted)).

Littleton's ordinances include within their purview sexually explicit speech, and the City does not contest that this speech is protected by the First Amendment. ZJ's challenge to Littleton's licensing system is based both on a claim that the City vests too much discretion in licensing officials in granting or denying a license, and that the system creates a risk of delay in granting or denying a license. Thus, ZJ has standing to bring a facial challenge to the licensing system on these two grounds.

It is true that the overbreadth doctrine discussed above "does not eliminate the need for the plaintiff to demonstrate its own cognizable injury in fact." Nat'l Council for Improved Health v. Shalala, 122 F.3d 878, 883 (10th Cir. 1997). But this requirement is satisfied where the plaintiff is engaged "in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution." Babbitt v. United Farm Workers Nat'l Union, 442 U.S. 289, 298 (1979). Such a plaintiff need not wait until an actual criminal prosecution has begun. Id.

ZJ's business depends in part on its ability to sell materials that are protected by the First Amendment. ZJ has alleged in its complaint that the City views it as an adult business that is in violation of the licensing requirements of the ordinance, and it has also presented a letter from the City denying ZJ's sales-tax license application because ZJ's business "may be categorized as an adult business." (3 Appellant's App. at 450.) ZJ has thus adequately shown that, at least from the City's perspective, its business is proscribed by the ordinance.

Finally, the City has proceeded with a civil complaint in state court against ZJ for violation of the ordinance based on ZJ's failure to apply for an adult-business license and ZJ's operation of an adult business without a license.[4] While ZJ's sales-tax license application was denied and a civil complaint was brought in state court only after ZJ's federal complaint was filed, these events nonetheless are evidence that when ZJ filed its lawsuit there was "a credible threat of prosecution" under Littleton's ordinance and that the threat of prosecution continues. Babbitt, 442 U.S. at 298; see also id. at 302 (indicating that standing exists "when fear of criminal prosecution under an allegedly unconstitutional statute is not imaginary or wholly speculative"). ZJ has satisfied the injury-in-

---

[4] In supplemental briefing the City explicitly waived the applicability of abstention under Younger v. Harris, 401 U.S. 37 (1971). A state may voluntarily submit to federal jurisdiction even though it might have had a tenable claim for abstention. See Ohio Civil Rights Comm'n v. Dayton Christian Sch., Inc., 477 U.S. 619, 626 (1986) (citing cases in which Younger abstention was waived).

fact requirement because the City has taken steps to enforce the ordinance against ZJ.[5]

**B**

ZJ also has standing to challenge the location requirements in Littleton's ordinance. Both parties agree that ZJ's business is located on a site in which adult businesses are not permitted under the ordinance. Based on the location of ZJ's business, the City has refused to grant ZJ a sales-tax license, and the City's complaint in state court is based in part on the location of ZJ's business. This is sufficient evidence for ZJ to meet the injury-in-fact requirement. By enacting and enforcing its ordinance, the City brought about ZJ's injury, and injunctive and declaratory relief, if granted by this court, would redress ZJ's injury.

---

[5] While ZJ has never applied for an adult-business license, this is not a requirement for standing to mount a facial challenge against an ordinance. See ACORN v. Municipality of Golden, 744 F.2d 739, 744 (10th Cir. 1984) ("Applying for and being denied a license or an exemption is not a condition precedent to bringing a facial challenge to an unconstitutional law.").

ZJ, the City argues, has no standing to challenge the licensing requirements of the ordinance because—even if such a challenge were successful—ZJ would nonetheless be in violation of the location requirements of the ordinance. However, ZJ challenges both sets of requirements, and if both challenges are successful, then ZJ will obtain its desired relief. See N. Ave. Novelties, Inc. v. City of Chicago, 88 F.3d 441, 443–44 (7th Cir. 1996). In addition, the parties' supplemental briefs reveal that the City is charging ZJ with separately violating both the licensing and location requirements. Thus, even if ZJ only succeeds in its challenge to the licensing provisions, it will nonetheless obtain some relief against prosecution by the City.

## C

ZJ has challenged the provisions in Littleton's ordinance that require the City to reject adult-business license applications when the applicant has been convicted of specified past criminal acts. ZJ has never alleged that these restrictions would apply to any of the owners or operators of ZJ's business. ZJ therefore has not even argued that it might be affected by these provisions in Littleton's ordinance, and accordingly it does not have standing to challenge these provisions. See FW/PBS, 493 U.S. at 234 (stating that for a party to have standing to challenge a similar provision in a Dallas ordinance, "the individual must show both (1) a conviction of one or more of the enumerated crimes, and (2) that the conviction or release from confinement occurred recently enough to disable the applicant under the ordinance").

ZJ also attacks the ordinance's license revocation and suspension provisions. ZJ, however, has never obtained a license from the City, nor has it indicated that it plans to obtain a license. Instead, ZJ stated in its complaint that it "does not intend to operate an adult entertainment establishment in a B-2 zone." (1 Appellant's App. at 11.) ZJ has neither alleged nor provided any evidence that the licensing suspension or revocation proceedings will apply to it. As it is "pure conjecture," Essence, 285 F.3d at 1281, whether ZJ will be forced to comply with

these provisions of the ordinance, ZJ likewise does not have standing to challenge these provisions. Cf. id. (holding that an adult business did not have standing to challenge a city's provisions for the granting of a license because the business already had a license and had not alleged any facts indicating that it would need to reapply for a license).

## D

ZJ decries as overly vague the ordinance's definition of an "adult bookstore, adult novelty store, or adult video store" as a business that "devotes a significant or substantial portion" of its floor space, inventory, or advertising to adult materials, or that obtains "a significant or substantial portion" of its revenue from those materials. Littleton, Colo. City Code § 3-14-2.

In the First Amendment context, the Supreme Court has determined that a plaintiff may have standing to challenge a statute as overly vague with respect to third parties even if the suspect statute is "unquestionably applicable" to the plaintiff. Young v. Am. Mini Theatres, Inc., 427 U.S. 50, 59–60 (1976) ("On several occasions we have determined that a defendant whose own speech was unprotected had standing to challenge the constitutionality of a statute which purported to prohibit protected speech, or even speech arguably protected."). This "exception from traditional rules of standing" reflects the Supreme Court's judgment that "the very existence of some statutes may cause persons not before

the Court to refrain from engaging in constitutionally protected speech or expression." Id. at 59–60.[6]

Nevertheless, as the Court in Young explained, "if the statute's deterrent effect on legitimate expression is not both 'real and substantial,' and if the statute is 'readily subject to a narrowing construction by the state courts,' the litigant is not permitted to assert the rights of third parties." Id. at 60 (citation omitted, quoting Erznoznik v. City of Jacksonville, 422 U.S. 205, 216 (1975)).

In Young, the Court concluded that the ordinance in question did not have a "real and substantial" deterrent effect on legitimate expression because "there is surely a less vital interest in the uninhibited exhibition of material that is on the borderline between pornography and artistic expression than in the free dissemination of ideas of social and political significance." Id. at 61. The same rationale applies equally to the present case. Adult businesses covered by Littleton's ordinance are, by definition, likely to carry materials that border on pornography. Stated simply, in light of Young, Littleton's ordinance does not have a "real and substantial" deterrent effect upon "legitimate expression."

---

[6] Having reviewed the evidence provided by the parties in the present case, including the videotape of the interior of ZJ's business, we conclude that the ordinance is "unquestionably applicable" to ZJ—i.e., a "significant or substantial" portion of ZJ's stock-in-trade, interior floor space, or revenue is devoted to material that is "characterized by the depiction or description" of the defined "specified sexual activities" or "specified anatomical areas."

- 14 -

As to the second issue raised by <u>Young</u>—whether the ordinance is readily subject to a narrowing construction— we note that language similar to the "significant or substantial" language used in this ordinance has been interpreted previously by state courts in a sufficiently narrow manner to avoid constitutional problems. A common method of narrowing construction has been to develop a percentage that will act as a guide as to what constitutes "significant or substantial." <u>See, e.g.</u>, <u>Dandy Co. v. Civil City of South Bend</u>, 401 N.E.2d 1380, 1385–86 (Ind. Ct. App. 1980) (holding that a conviction under a similar ordinance was sustainable where there was evidence that "50 to 80% of the inventory was adult in nature"); <u>St. Louis County v. B.A.P., Inc.</u>, 25 S.W.3d 629, 630–31 (Mo. Ct. App. 2000) (noting that a local adult-business ordinance established a rebuttable presumption that a business carries "a substantial portion" of adult-oriented items where more than twenty-five percent of the retail value of the inventory consists of such items); <u>City of New York v. Les Hommes</u>, 724 N.E.2d 368, 370 (N.Y. 1999) (noting that the City of New York had clarified that a "substantial portion" for purposes of its adult-business ordinance meant at least forty percent). We conclude that "the limited amount of uncertainty in the ordinance[] is easily susceptible of a narrowing construction." <u>Young</u>, 427 U.S. at 61.

In short, we agree with the district court that ZJ "does not have standing to challenge the constitutionality of [Littleton's ordinance] under the void for vagueness doctrine." (3 Appellant's App. at 561.)

**E**

Finally, Littleton's ordinance as originally enacted prohibited individuals under twenty-one years of age from being licensees, owners, managers, employees, or customers of an adult business. ZJ argues that it is unconstitutional to restrict individuals between the ages of eighteen and twenty-one from entering or working in its business. We need not address ZJ's challenge to the age restrictions, however, because the City has amended its ordinance to provide that anyone over eighteen years of age may enter an adult business that does not offer live entertainment.[7] Thus, ZJ's challenge to the age restrictions on customers and employees of its business is now moot, and we will not address it.

**IV**

We now address ZJ's claims that Littleton's licensing scheme grants excessive discretion to licensing officials.

Because this case was decided on summary judgment, we review the district court's decision de novo, applying the same legal standard as the district court.

---

[7] To the extent that other provisions of Littleton's ordinance conflict with this amendment, they have been repealed. Littleton, Colo., Ordinance 13, § 9 (2001).

- 16 -

Simms v. Oklahoma ex rel. Dep't of Mental Health & Substance Abuse Servs., 165 F.3d 1321, 1326 (10th Cir. 1999). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c) para. 4. "When applying this standard, we view the evidence and draw reasonable inferences therefrom in the light most favorable to the non-moving party." Simms, 165 F.3d at 1326. "If there is no genuine issue of material fact in dispute, we determine whether the district court correctly applied the substantive law." Id. In the First Amendment context, "[o]ur review of the record is more rigorous," and we are "obligated to make an independent examination of the record in its entirety." Essence, 285 F.3d at 1283 (quotation omitted).

Littleton's ordinance requires all adult businesses to obtain a license prior to opening for business. "Adult businesses," as defined by the ordinance, include adult bookstores and adult video stores, see Littleton, Colo., City Code § 3-14-2, that sell materials presumptively protected by the First Amendment.[8] A very

---

[8] In the instant case, the City does not argue that the materials sold by "adult businesses" are obscene and therefore unprotected by the First Amendment. The City has therefore effectively made the same concession that the City of Dallas made in FW/PBS: i.e., that the ordinance applies to businesses that purvey

(continued...)

- 17 -

similar licensing scheme was analyzed as a "prior restraint" on speech by six of the Justices of the Supreme Court in FW/PBS. 493 U.S. at 225–30 (opinion of O'Connor, J.); id. at 238 (Brennan, J., concurring). Following FW/PBS, we have concluded that "licensing of adult entertainment establishments" must be analyzed as a prior restraint. Essence, 285 F.3d at 1289–90.

Ordinarily, a duly enacted law is presumed to be constitutional. When a law infringes on First Amendment rights, however, the proponent of the law bears the burden of establishing its constitutionality. Wilson v. Stocker, 819 F.2d 943, 949 (10th Cir. 1987). Whether or not Littleton's ordinance is content-neutral is not relevant to the burden of proof, because any "system of prior restraint" comes to this court "bearing a heavy presumption against its constitutional validity." FW/PBS, 493 U.S. at 225 (quotation omitted). In the present case, therefore, the City bears the burden of establishing that Littleton's ordinance is constitutional.

## A

Standards for analysis of a prior restraint of speech were initially developed in the context of censorship schemes in Freedman, where the Supreme Court held that (1) a censorship scheme must assure the exhibitor, "by statute or authoritative

---

[8](...continued)
speech protected by the First Amendment. See FW/PBS, 493 U.S. at 224 (noting that the Dallas ordinance largely targeted businesses that purvey sexually explicit speech and no claim was made that such materials were unprotected by the First Amendment).

judicial construction, that the censor will, within a specified brief period, either issue a license or go to court to restrain showing the film"; (2) the censorship scheme must "assure a prompt final judicial decision" following a refusal to license; and (3) "the burden of proving that the film is unprotected expression must rest on the censor."  380 U.S. at 58–59.

In FW/PBS, a divided Supreme Court considered whether Freedman's procedural requirements applied to adult-business licensing schemes as well. Two Justices joined Justice O'Connor in announcing the judgment of the Court that the Dallas licensing scheme at issue was unconstitutional.  FW/PBS, 493 U.S. at 229.  Three other Justices concurred but would have gone further in applying the Freedman requirements.  Id. at 238–39 (Brennan, J., concurring).  Justice O'Connor's opinion characterizes Freedman as mandating that any prior restraint "that fails to place limits on the time within which the decisionmaker must issue the license is impermissible," FW/PBS, 493 U.S. at 226, because a "scheme that fails to set reasonable time limits on the decisionmaker creates the risk of indefinitely suppressing permissible speech," FW/PBS, 493 U.S. at 227.  The Court in FW/PBS determined that the Dallas ordinance failed to meet this general requirement because a license could not be approved without inspection and approval by the fire department, the health department, and the building official as being in compliance with relevant laws and ordinances.  Id.  Even though a

- 19 -

completed license application had to be approved or disapproved within thirty days after submission, there was nonetheless a risk that the city could endlessly delay those inspections and approvals in order to postpone consideration of a license application because there was no time limit for the inspections and approvals. Id. Concluded the Court: "Thus, the city's regulatory scheme allows indefinite postponement of the issuance of a license." Id.

Justice O'Connor then reiterated the Freedman procedural requirements:

[T]he following three procedural safeguards were necessary to ensure expeditious decisionmaking by the motion picture censorship board: (1) any restraint prior to judicial review can be imposed only for a specified brief period during which the status quo must be maintained; (2) expeditious judicial review of that decision must be available; and (3) the censor must bear the burden of going to court to suppress the speech and must bear the burden of proof once in court.

Id. at 227. Concluding that the "first two safeguards are essential" to preventing undue delay in the licensing process, id. at 228, and that the Dallas licensing scheme "fails to provide an avenue for prompt judicial review" of a license denial, id. at 229, Justice O'Connor's opinion held that Freedman's third requirement—that the censor bear the burden of obtaining judicial action and of proof—need not be applied in the context of adult-business licensing schemes. Id. at 230.

The remainder of the Court was sharply divided. Justice Brennan, joined by two other Justices, agreed that the Dallas ordinance was an unconstitutional

prior restraint, but would have applied all three of the <u>Freedman</u> procedural requirements.  <u>Id.</u> at 238–39 (Brennan, J., concurring).  Justice White, joined by the Chief Justice, concluded that the Dallas ordinance was constitutional and that none of the <u>Freedman</u> procedural requirements applied because the ordinance was not a prior restraint.  <u>Id.</u> at 245 (White, J., concurring and dissenting).  Justice Scalia concurred in part and dissented in part on other grounds.  <u>Id.</u> at 250 (Scalia, J., concurring and dissenting).

Faced with the fractured decision in <u>FW/PBS</u>, our sibling courts of appeals have struggled to determine which of <u>Freedman</u>'s requirements apply to licensing schemes.  Joined by several other circuits, we have concluded that the first two <u>Freedman</u> requirements—maintenance of the status quo and expeditious judicial review—are applicable to the licensing context.  <u>See</u> <u>Essence</u>, 285 F.3d at 1290; <u>see also, e.g.,</u> <u>Baby Tam & Co. v. City of Las Vegas</u>, 154 F.3d 1097, 1100–01 (9th Cir. 1998); <u>11126 Baltimore Boulevard, Inc. v. Prince George's County</u>, 58 F.3d 988, 996 & n.12 (4th Cir. 1995); <u>TK's Video, Inc. v. Denton County</u>, 24 F.3d 705, 707–08 (5th Cir. 1994).  With respect to <u>Freedman</u>'s third requirement—that the censor must bear the burden of going to court and of proof—our circuit has not yet decided whether it is applicable to adult-business licensing schemes.  <u>See</u> <u>Essence</u>, 285 F.3d at 1290 n.17.  Other circuits, however, have held that the third requirement of <u>Freedman</u> does not apply to licensing

schemes that do not directly regulate content.  See MacDonald v. City of Chicago, 243 F.3d 1021, 1035–36 (7th Cir. 2001); Ward v. County of Orange, 217 F.3d 1350, 1355 (11th Cir. 2000); Steakhouse, Inc. v. City of Raleigh, 166 F.3d 634, 640–41 (4th Cir. 1999).   Because ZJ does not argue that the Littleton ordinance fails to satisfy the third Freedman requirement, we limit our analysis here to the two procedural safeguards clearly adopted in FW/PBS.

**B**

Our first inquiry is whether Littleton's ordinance satisfies the requirement that "any restraint prior to judicial review can be imposed only for a specified brief period during which the status quo must be maintained."  FW/PBS, 493 U.S. at 227.  Although the ordinance specifies that a license application must be approved within thirty days, Littleton, Colo., City Code § 3-14-8, ZJ stresses that, before an application is accepted, (1) applicants are required to obtain a written statement from the City's Zoning Official stating that the proposed location is in compliance with the location requirements of the ordinance, (2) specified persons named on the application must be fingerprinted and photographed by the Police Department,[9] and (3) the applicant must obtain a sales-tax license.  ZJ argues that

---

[9] Littleton's original ordinance required all principal owners, managers and employees to be photographed and fingerprinted.  Littleton, Colo., Ordinance 27 (1993).  In 2001, the City eliminated the requirement with respect to employees, but specified that managers, general partners and (in the case of a corporation) the

(continued...)

these provisions present the possibility of indefinite postponement of a license. Id.

Justice O'Connor's opinion in FW/PBS, which announced the judgment of the Court, held that the Dallas ordinance in question allowed for indefinite postponement of a license because the premises had to be approved in advance by "the health department, fire department and the building official." 493 U.S. at 227. Although the prerequisites required by Littleton's ordinance are arguably less onerous than those in FW/PBS, Littleton's ordinance similarly does not specify a time limit within which the City must complete them. We therefore consider whether they render Littleton's ordinance unconstitutional for failure to satisfy the first requirement of Freedman and FW/PBS.

Every retail business in Colorado must obtain a sales-tax license. Colo. Rev. Stat. § 39-26-103. Because this requirement is not specific to adult businesses, it is irrelevant to the constitutionality of the licensing ordinance at issue in the present case. The City does not argue, however, that the other two requirements are similarly applicable to all businesses, and we therefore presume that they are specific to adult businesses. Littleton's ordinance provides no

---

[9](...continued) president of the corporation must be photographed and fingerprinted. Littleton, Colo., Ordinance 13 (2001). No time limit for the fingerprinting and photography was specified either in the original ordinance or in the amended ordinance.

assurance that the City will promptly act on a pre-application request for a certification of zoning compliance or for fingerprinting or photography.

During oral argument of the present case, counsel for the City offered to make a "judicial admission" on behalf of the City that "if the Zoning Official doesn't act, the application can be complete without his statement." Littleton's ordinance, however, explicitly states that the "City Clerk shall not accept any application that is not complete in every detail." Littleton, Colo., City Code § 3-14-5. Such details presumably include the provision of the Zoning Official's letter as well as the requirements of photography and fingerprinting by the Police Department. By interpreting the ordinance as allowing for the submission of an incomplete application in the event of delay by the Zoning Official, appellee's counsel is stating a legal conclusion, and courts are reluctant to treat opinions and legal conclusions as judicial admissions. See MacDonald v. General Motors Corp., 110 F.3d 337, 341 (6th Cir. 1997); Glick v. White Motor Co., 458 F.2d 1287, 1291 (3d Cir. 1972); New Amsterdam Cas. Co. v. Waller, 323 F.2d 20, 24 (4th Cir. 1963). "A matter as important as the constitutionality of a state statute should not be decided on the basis of an advocate's concession during oral argument." Virginia v. Am. Booksellers Ass'n, 484 U.S. 383, 398 (1988) (Stevens, J., concurring in part and dissenting in part).

Moreover, <u>Freedman</u> requires that either a "statute or authoritative judicial construction" must specify the time limit within which the license must be issued or denied, 80 U.S. at 58–59, and there is nothing in Justice O'Connor's opinion suggesting that this requirement was changed in <u>FW/PBS</u>. Federal courts "lack jurisdiction authoritatively to construe state legislation." <u>United States v. Thirty-Seven (37) Photographs</u>, 402 U.S. 363, 369 (1971). Only if a state law is "readily susceptible" of an interpretation may the federal courts subject it to a narrowing construction, and "we will not rewrite a state law to conform it to constitutional requirements." <u>Am. Booksellers Ass'n</u>, 484 U.S. at 397 (majority opinion). Because Littleton's ordinance is not "readily susceptible" to the interpretation offered by the City—to the contrary, it is readily susceptible to the opposite interpretation—much as we are tempted, we cannot decide this case on the basis of Littleton counsel's oral argument offer.

Although the Colorado Supreme Court upheld a similar requirement that a zoning permit must accompany the application for a sexually-oriented-business license in <u>City of Colo. Springs v. 2354, Inc.</u>, 896 P.2d 272, 281–82 (Colo. 1995), a separate Zoning Ordinance in that case required that a zoning administrator "approve or deny a zoning permit application within ten working days of the submittal." <u>Id.</u> at 282. Counsel for the City implicitly conceded at oral argument that no such time limit is present in this case. Because no time limit is specified

in the ordinance or by authoritative judicial construction, we hold that the subject ordinance's requirement that a letter from the Zoning Official accompany the application, along with the fingerprinting and photography requirements, are unconstitutional for failure to specify a time limit within which the City must act.[10]  See FW/PBS, 493 U.S. at 227.  To the extent that the City's motion for summary judgment on this point was granted and ZJ's motion for partial summary judgment was denied, the order of the district court is reversed.

## C

Having held that Littleton's ordinance fails to meet the first test of FW/PBS, we must decide whether the unconstitutional provisions are severable. Under Colorado law, a section of a legislative enactment is severable if the remaining portion of the statute is autonomous and the legislature's will in passing the entire statute is not thwarted by the excision.  City of Lakewood v. Colfax Unlimited Ass'n, 634 P.2d 52, 70 (Colo. 1981) (en banc).  Utilization of a severability clause creates a presumption that the legislature would have been

---

[10]  As noted above, this defect in Littleton's ordinance cannot be cured by "judicial admission," as the City's counsel suggests.  Appropriate procedures under Colorado law for the amendment of a city ordinance must be followed.  It is not our role to sit as a party to negotiations concerning the implementation of the City's code.  Littleton's ordinance can easily be amended to state that an application may be submitted without zoning approval, fingerprinting, or photography if a good faith request is not acted on by the Zoning Official or the Police Department within a specified brief time period.

satisfied with the remaining portions of the enactment. Id. A provision will not be held severable, however, if the remaining enactment is "so incomplete or riddled with omissions" that it lacks coherence. Id.

At issue in the present case is an ordinance that contains a severability clause, both in its original version and in the amended version. Littleton, Colo., Ordinance 13, § 8 (2001); Littleton, Colo., Ordinance 27, § 8 (1993). More importantly, other requirements of the ordinance do not depend upon the constitutionally suspect pre-application requirements for coherence or consistency, and the purpose of the ordinance is not thwarted by their excision. As a result, we conclude that the pre-application licensing provisions of the ordinance are severable.

**D**

Because other provisions of Littleton's ordinance, if constitutional, may be enforced without the pre-application requirements, we must decide whether the remainder of the ordinance is constitutional. Thus we consider the "prompt judicial review" requirement adopted by the Supreme Court in FW/PBS, 493 U.S. at 228. ZJ argues that "prompt judicial review" requires the City to provide a "prompt decision" from the courts as to whether a license should have been granted or denied. (Appellant's Br. at 23.) According to the City, however, "prompt judicial review" means only that there must be "'the possibility' or 'an

avenue' for prompt judicial review," and there need not be a "judicial determination" within a short period of time. (Appellee's Am. Resp. Br. at 47.)

The circuits are divided over this question. Some have held that "prompt judicial review," at least with regard to licensing decisions, requires only that the government provide prompt access to the courts. See, e.g., Boss Capital, Inc. v. City of Casselberry, 187 F.3d 1251, 1256–57 (11th Cir. 1999) (concluding that "access to prompt judicial review is sufficient for licensing decisions"); TK's Video v. Denton County, 24 F.3d 705, 709 (5th Cir. 1994) (same); see also Graff v. City of Chicago, 9 F.3d 1309, 1324–25 (7th Cir. 1993) (en banc) (opinion of Manion, J.) (noting the availability of the common-law writ of certiorari and finding this procedure sufficient under FW/PBS); Jews for Jesus v. Mass. Bay Trans. Auth., 984 F.2d 1319, 1327 (1st. Cir. 1993) (implying that access is sufficient). Others have concluded that "prompt judicial review" requires a prompt judicial resolution of license denials. See Nightclubs, Inc. v. City of Paducah, 202 F.3d 884, 892–93 (6th Cir. 2000); Baby Tam & Co. v. City of Las Vegas, 154 F.3d 1097, 1101–02 (9th Cir. 1998); 11126 Baltimore Boulevard, Inc. v. Prince George's County, 58 F.3d 988, 1000–01 (4th Cir. 1995).

Access to prompt judicial review was selected as the appropriate standard by the Eleventh Circuit in Boss Capital, 187 F.3d at 1255–57. That case enunciates two principal bases in support of its holding that mere access is

- 28 -

sufficient in adult-business licensing cases. First, Boss Capital holds that Justice O'Connor modified the second Freedman requirement relating to judicial review in the adult-business licensing context. Id. at 1255–56. Second, Boss Capital reasons that this interpretation of FW/PBS is appropriate given the difference between censorship cases and licensing cases. Id. at 1256–57.

Focusing on Justice O'Connor's language, the Eleventh Circuit points out that Justice O'Connor uses different terminology than Justice Brennan in describing Freedman's second requirement. Id. at 1255 (citing FW/PBS, 493 U.S. at 228–29). Justice O'Connor's opinion holds that there must be "the possibility of prompt judicial review" in the event a license is denied, FW/PBS, 493 U.S. at 228 (opinion of O'Connor, J.) (emphasis added), and states that the Dallas ordinance failed to provide an "avenue for prompt judicial review," id. at 229 (emphasis added). Later, the requirement is characterized by Justice O'Connor as "the availability of prompt judicial review." Id. at 230 (emphasis added). In contrast, Justice Brennan's concurrence states that a "prompt judicial determination must be available." Id. at 239 (Brennan, J., concurring) (emphasis added).

Justice O'Connor's language could arguably mean that the FW/PBS Court modified the second Freedman requirement in the context of licensing cases. See Boss Capital, 187 F.3d at 1255–56 (relying partially on the difference of language

to distinguish Freedman from FW/PBS).[11]  It is by no means clear, however, that

Justice O'Connor intended to change the meaning of the "prompt judicial review"

requirement.  First, when Justice O'Connor refers to "prompt judicial review,"

she cites to Freedman, which unequivocally stated that the procedure must "assure

a prompt final judicial determination."  380 U.S. at 59; see also 11126 Baltimore

Boulevard, 58 F.3d at 999 (discussing this point).  Other decisions following

Freedman have used the phrase "prompt judicial review" to indicate a prompt

judicial determination, albeit in a censorship context.  See 11126 Baltimore

Boulevard, 58 F.3d at 1000 (listing several Supreme Court cases).  Moreover,

elsewhere in her opinion in FW/PBS, Justice O'Connor states that the "first two

---

[11]  If the O'Connor opinion did modify Freedman's "prompt judicial review" requirement for the licensing context, then it arguably struck down the ordinance at issue in FW/PBS on a narrower ground (failure to provide prompt access to judicial review) than the Brennan concurrence would have (failure to provide the prompt judicial determination required by Freedman).  If that is the case, then the O'Connor restatement of the "prompt judicial review" requirement might well state the law, at least in the context of adult business licensing.  See Marks v. United States, 430 U.S. 188, 193 (1977) ("When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds." (quotation omitted)).  Whether this would constitute the narrowest ground for decision is debatable, however.  See 11126 Baltimore Boulevard, 58 F.3d at 999 & n.15 (arguing that, if Justice O'Connor modified the Freedman requirement, this was not the narrowest ground for decision).  Because we conclude that Justice O'Connor did not modify the second Freedman requirement in the licensing context, we need not decide which ground for decision in FW/PBS was the narrowest.

safeguards" provided for by Freedman are "essential."  FW/PBS, 493 U.S. at 228.

Although Justice O'Connor inevitably qualifies the prompt judicial review

requirement by referring to the "possibility," "availability," or "avenue" of such

review, such qualification most likely amounts to an acknowledgment that it is up

to the plaintiff to decide whether or not to seek judicial review.  This language

does not necessarily indicate any intent to weaken the second Freedman

requirement.

Parties always have access to the courts.  See FW/PBS, 493 U.S. at 248

(White, J., dissenting) ("[N]o one suggests that licensing decisions are not subject

to immediate appeal to the courts."); Baby Tam, 154 F.3d at 1101 ("[A] person

always has a judicial forum when his speech is allegedly infringed." (quoting

Graff, 9 F.3d at 1324)).  Judicial review is available regardless of whether an

applicable state court procedure is expressly mentioned in the ordinance.  In order

to have "prompt judicial review," however, a party necessarily must be able to

obtain a decision, for "without a decision, the most exhaustive review is

worthless."[12]  Baby Tam, 154 F.3d at 1101–02.  Thus, Justice O'Connor's

"avenue for prompt judicial review" requirement in a First Amendment context

---

[12]  Baby Tam draws an analogy to baseball.  Judicial review without a decision "would be like throwing a pitch and not getting a call.  As legendary major league umpire Bill Klem once said to an inquisitive catcher: 'It ain't nothin' till I call it.'  This is also true of judicial review.  Until the judicial officer makes the call, it ain't nothin'.'"  154 F.3d at 1102.

makes far more sense if it is understood to mean a prompt final judicial determination.

The Eleventh Circuit further points out in Boss Capital that Freedman and the line of cases following it can be distinguished from adult-business licensing cases on the grounds that they involved censorship rather than licensing. Justice O'Connor held in FW/PBS that licensing schemes do not involve "the grave 'dangers of a censorship system,'" and therefore "the full procedural protections set forth in Freedman are not required." 493 U.S. at 228 (citation omitted). As the Eleventh Circuit notes, adult-business licensing schemes primarily involve "mundane and ministerial factors," such as the general qualifications of each applicant.[13] Boss Capital, 187 F.3d at 1256. In contrast, censorship cases involve a highly subjective judgment about the nature of the suspect material.

In addition, the Eleventh Circuit notes, "unlike movie distributors who might show a given film in hundreds of theaters around the country," applicants for adult-business licenses arguably have a greater incentive "to stick it out and see litigation through to its end." Id. at 1256. Freedman's rationale therefore arguably makes less sense in the licensing context, and Boss Capital concludes

---

[13] Littleton's ordinance, for example, lists eight specific reasons to deny a license—although the ordinance does not explicitly state that this list is exclusive—and these reasons do not involve discretion on the part of the licensing official. Littleton, Colo., City Code § 3-14-8.

that the need for a prompt judicial decision is therefore "less compelling."[14]  See

Boss Capital, 187 F.3d at 1256–57 (arguing that access to prompt judicial review

is sufficient for licensing cases).  Because the ordinance in dispute contained an

explicit judicial review provision, the Eleventh Circuit held it constitutional.  Id.

at 1255, 1257.

Boss Capital draws a rational distinction between licensing cases and

censorship cases.  The purpose of Justice O'Connor's language distinguishing

between these two categories, however, is most logically understood as an attempt

at explaining why Freedman's third safeguard—that the burden of going to court

and the burden of proof must be on the censor—is not appropriate to the licensing

context.  See FW/PBS, 493 U.S. at 229–30 (concluding that the third Freedman

requirement does not apply to licensing cases).  If Justice O'Connor had intended

to adopt a different judicial review requirement for licensing cases, she could

have done so explicitly, just as she explicitly rejected the burden-shifting

requirement.

---

[14]  Analyzing the constitutionality of a permit requirement for a public forum, the Supreme Court has recently held that an ordinance that gives no discretion to the licensing official does not threaten to stifle free expression.  See Thomas v. Chi. Park Dist., 122 S. Ct. 775, 780–81 (2002).  However, Thomas distinguishes FW/PBS on the grounds that "it involved a licensing scheme that target[ed] businesses purveying sexually explicit speech," id. at 780 n.2 (quotation omitted), and the Court did not overrule its earlier decision that the first two Freedman requirements must be applied in adult-business licensing cases.

Other circuits have held that the judicial review requirement of Freedman was not altered by FW/PBS. As the Sixth Circuit notes, Justice O'Connor "gave no indication that she was modifying the second requirement of prompt judicial review" in the licensing context. Nightclubs, 202 F.3d at 893. According to the Ninth Circuit, the FW/PBS plurality "took issue only with Freedman's requirement that the censor bear the cost of going to court to obtain judicial review; otherwise, FW/PBS offered nothing different from Freedman's concept of what 'judicial review' meant." Baby Tam, 154 F.3d at 1102; see also 11126 Baltimore Boulevard, 58 F.3d at 999 (reaching the same conclusion). If the Court adopted the Freedman requirement without modification in FW/PBS, then the distinction between licensing and censorship is not relevant here.

Even if the rationale behind Freedman is specific to censorship cases, there is an equally valid rationale for requiring prompt judicial review in adult-business licensing cases. Although adult-business licensing ordinances are technically considered "content-neutral," ZJ Gifts D-2, L.L.C. v. City of Aurora, 136 F.3d 683, 686–88 (10th Cir. 1998), they are distinguishable from other content-neutral time, place, and manner restrictions insofar as they target "businesses purveying sexually explicit speech." Thomas v. Chi. Park Dist., 122 S. Ct. at 780 n.2 (2002) (quoting FW/PBS, 493 U.S. at 224). A licensing official may have little or no

discretion in reviewing an application, but he or she may be tempted nonetheless to overstep the bounds of the ordinance.

Adult businesses are controversial, and the possibility exists that licensing officials might allow their personal views on the morality of sexually explicit entertainment to sway a decision on an application. Given the strong feelings that adult businesses can engender, there must be a prompt judicial determination to ensure that licensing officials do not exceed their authority under the ordinance in their zeal to protect the local community. ZJ sells sexually explicit magazines and videocassette tapes, which are presumptively protected by the First Amendment, see FW/PBS, 493 U.S. at 224, and the danger that an ordinance like Littleton's may be improperly used as a subterfuge for censorship is too great to overlook the necessity for a prompt judicial determination.

In short, we are not persuaded by those circuits that have concluded that mere "access" to judicial review is sufficient in licensing cases. Following the Fourth, Sixth and Ninth Circuits, we hold that, in the event that an adult-business license is denied, FW/PBS requires a prompt final judicial decision regarding the validity of the denial. "[A] theoretical possibility of expeditious judicial review is not constitutionally sufficient." Nightclubs, 202 F.3d at 892. "While we trust state courts to exercise due diligence, we cannot be sure that a state judge . . . toiling under a busy docket, will conduct a hearing and render a decision in a

-35-

prompt manner." Id. Prompt judicial review, including a prompt final decision, must be assured in all First Amendment licensing cases in order for the second requirement of Freedman and FW/PBS to be satisfied. What constitutes a prompt judicial determination in the adult-business licensing context is to be determined by reference to the Supreme Court's jurisprudence following Freedman. See, e.g., Southeastern Promotions, Ltd. v. Conrad, 420 U.S. 546, 561–62 (1975) (holding that a judicial review process lasting more than five months was not prompt).

Littleton's ordinance allows a party whose license has been denied to appeal to the Colorado district court under Colorado Rule of Civil Procedure 106(a)(4). This Rule allows an adverse decision regarding the license to be given expedited review in the trial court's discretion. 2354 Inc., 896 P.2d at 284 (citing Colo. R. Civ. P. 106(a)(4)(VIII)). Because this Rule does not assure that license decisions will be given expedited review, however, it does not save Littleton's ordinance. Accordingly, the order of the district court granting summary judgment for the City is reversed to the extent that it held the judicial review procedure to be constitutionally sufficient.

## V

Finally, ZJ attacks the location restrictions in Littleton's ordinance as unconstitutional because they do not provide reasonable alternatives of communication, as required by City of Renton v. Playtime Theatres, Inc., 475

U.S. 41 (1986).[15]  It is the City's burden to demonstrate that its ordinance meets this requirement.  See ZJ Gifts, 136 F.3d at 688.

Renton considered a local ordinance that restricted the location of adult businesses.  475 U.S. at 44.  Content-neutral zoning ordinances, the Court held, are permissible so long as "reasonable alternative avenues of communication" are left open, id. at 53, a question that is answered through an analysis of how much land is available in which adult businesses may be located under the zoning system, id. at 53–54.  In undertaking that analysis, the courts must examine what land is actually available, but also must keep in mind that adult businesses must "fend for themselves in the real estate market, on an equal footing with other prospective purchasers and lessees."  Id. at 54.

How much land is sufficient to constitute "reasonable alternative avenues of communication" is a question that the Renton Court left open.  In Renton, the ordinance left "520 acres, or more than five percent of the entire land area of" the

_____

[15]  In its reply and supplemental briefing, ZJ argued that the location restrictions in Littleton's ordinance should be viewed as "content-based" restrictions on speech subject to strict scrutiny.  In particular, ZJ argues that the recent Supreme Court decision in Thomas, 122 S. Ct. 775 (2002), and Justice Kennedy's opinion in City of Los Angeles v. Alameda Books, Inc., 122 S. Ct. 1728, 1739 (2002) (Kennedy, J., concurring in the judgment), support this claim.  This court, however, has previously held that a nearly identical ordinance should be reviewed as a "content-neutral" regulation subject to intermediate scrutiny.  See ZJ Gifts, 136 F.3d at 686–88.  We see nothing in either Thomas or Alameda Books that requires reconsideration of our conclusion as to the applicable standard of review.

city, open for adult businesses, with the land "in all stages of development from raw land to developed, industrial, warehouse, office, and shopping space that is criss-crossed by freeways, highways, and roads." Id. at 53 (quotation omitted). The Renton Court determined that the ordinance "easily meets" the requirement of providing a "reasonable opportunity to open and operate an adult theater within the city." Id. at 54.

Under Littleton's ordinance, there are approximately one-hundred acres of land that are within industrial zones and outside the minimum distance from nearby schools, day care centers, and correctional facilities.[16] This land constitutes between 1.2 and 1.3% of the total acreage of the City of Littleton. At least one other court of appeals has found this proportion of land to be sufficient under Renton. See Lakeland Lounge of Jackson, Inc. v. City of Jackson, 973 F.2d 1255, 1260 (5th Cir. 1992).

ZJ argues that portions of this land are unavailable because specific parcels are (1) currently occupied by large-scale manufacturing uses, see Topanga Press,

---

[16] ZJ argues that some of these parcels are unavailable because portions of the parcels are within five-hundred feet of schools, day care centers, and correctional facilities. However, as the record shows, the majority of these parcels are outside the distance limits. Under Littleton's ordinance, the distance limits are only violated if the exterior wall of the structure in which the adult business is located is within the minimum distance from the neighboring use. Thus, these parcels are available for use by an adult business as long as the business locates in the portions of the parcels where such uses are permitted.

Inc. v. City of Los Angeles, 989 F.2d 1524, 1531–32 (9th Cir. 1993), or (2) currently owned by governmental entities, see Centerfold Club, Inc. v. City of St. Petersburg, 969 F. Supp. 1288, 1305 (M.D. Fla. 1997).

First, we disagree with the notion that warehouses and other large-scale manufacturing uses must be excluded per se from any calculation of whether there is sufficient land for adult business uses. In Renton itself the Supreme Court noted the diversity of property that was available for adult business use under the ordinance—"industrial, warehouse, office, and shopping space," Renton, 475 U.S. at 53 (emphasis added)—in concluding that there was sufficient land available. Similarly, Littleton's ordinance leaves a diversity of different types of properties available for use by an adult business, including large-scale manufacturing and warehouse uses. Under Renton, there is no need to exclude those uses from our analysis.[17] While it may indeed be more difficult and more expensive for an adult-business owner to acquire and convert these types of properties, there is no requirement that those businessmen must "be able to obtain sites at bargain prices." Id. at 54.

---

[17] We add that we do not address a situation where all or nearly all properties consist of large-scale manufacturing and warehouse uses, such that the diversity of land uses described in Renton does not exist. In such a situation, the municipality may be "effectively denying" adult businesses "a reasonable opportunity to open and operate." Renton, 475 U.S. at 54.

As for inclusion of the government-owned properties, we need not decide whether that is permissible under the Renton analysis. Even excluding those parcels that are government-owned according to evidence introduced by ZJ, there is sufficient property zoned for adult business uses to meet the requirements of Renton. ZJ submitted evidence identifying only one specific property—the Littleton City Shops between Belleview Avenue and Prentice Avenue, constituting twelve acres—as being owned by the government. Other properties mentioned by ZJ in its brief—a fire training center, a nature area, and the Arapahoe County Government Center—are not identified by parcel, nor does ZJ provide any information as to their total acreage. However, even giving ZJ the benefit of the doubt as to these additional properties, based on the information we can glean from the record, removing these properties would only reduce the total available area by approximately ten acres.[18] Thus, the total area available

---

[18] In reaching this conclusion, we draw the following inferences in ZJ's favor: Littleton's fire protection center and the abandoned city property are located in an industrial zone that comprises approximately eight acres near the intersection of Chenango and Vallejo Streets. We assume that all of those properties were used by both the fire protection center and the abandoned city property, and we remove them from our analysis. As for the Arapahoe Government Center, ZJ relies on the City's maps in the record as evidence regarding its location on "South Crestline Avenue." We can find only an ambiguous reference for a parcel south of West Crestline Avenue, which appears to occupy about two acres of the industrial zones. ZJ has provided us with absolutely no information from which an inference can be drawn regarding the specific location or acreage of Littleton's nature area.

excluding government properties would be about seventy-eight acres, or just under one percent of the total area of the City.

Moreover, excluding both the government properties to which ZJ objects as well as those properties that are implicated by the minimum distance requirements of the ordinance, the City has listed over twenty sites within the industrial districts that its real estate expert stated would be available for adult businesses. Given the small population of Littleton (forty-thousand people), and the fact that ZJ is the only adult business that is currently located in Littleton, this is a sufficient number of available sites. See Diamond v. City of Taft, 215 F.3d 1052, 1058 (9th Cir. 2000) (holding seven available sites sufficient where only one business sought to locate within the municipality), cert. denied, 531 U.S. 1072 (2001);[19] see also Boss Capital, 187 F.3d at 1254 (listing factors to be considered in analyzing whether there are sufficient sites for adult businesses, including geographical size of the locality, location of sites, number of adult businesses currently operating or seeking permission to operate, and population). We

---

[19] Where an adult-business zoning regulation prohibits the location of one adult business within a minimum distance of another one—as Littleton's ordinance does—some courts have required the analysis of the minimum number of sites to take into account those spacing requirements, dramatically reducing the potential number of sites. See, e.g., Young v. City of Simi Valley, 216 F.3d 807, 821 n.13 (9th Cir. 2000). ZJ has never argued that we should incorporate the spacing requirements into our analysis, and given that ZJ is the only adult business currently operating or seeking to operate in Littleton, such an adjustment would be inappropriate in the first place. See Diamond, 215 F.3d at 1057–58.

conclude that the ordinance meets the requirements of <u>Renton</u>,[20] and the section of the district court order dealing with the location requirements of Littleton's ordinance is affirmed.

**VI**

In sum, we conclude that ZJ has standing to challenge the pre-application and location requirements of the ordinance and the judicial review procedure. ZJ lacks standing, however, to challenge the ordinance as vague, attack the ordinance's license revocation and suspension provisions, or challenge the age and criminal history restrictions in the ordinance. As to the merits of ZJ's challenge, we hold that the judicial review procedure and pre-application requirements of Littleton's ordinance are unconstitutional, but that the location requirements of the ordinance are constitutional.

---

[20] ZJ urges us to hold that the Colorado Constitution provides broader protections than the United States Constitution in this context. None of the cases cited by ZJ in support of this proposition, however, involves a challenge to adult-business licensing ordinances. <u>See</u> <u>Bock v. Westminster Mall Co.</u>, 819 P.2d 55, 56 (Colo. 1991) (discussing plaintiffs' right to distribute political leaflets in a shopping mall); <u>People v. Ford</u>, 773 P.2d 1059, 1061 (Colo. 1989) (addressing the constitutionality of the Colorado obscenity statute); <u>People v. Seven Thirty-Five East Colfax, Inc.</u>, 697 P.2d 348, 353 (Colo. 1985) (same). In analyzing a local ordinance regulating nude dancing, the Colorado Supreme Court relied almost exclusively on federal cases in determining that the ordinance did not violate the free speech protections of either the federal or state constitutions. <u>See</u> <u>7250 Corp. v. Bd. of County Comm'rs</u>, 799 P.2d 917, 924–28 (Colo. 1990) (en banc). We have found no evidence that in this particular field of free speech jurisprudence the Colorado courts have interpreted the state constitution to provide greater protection than the federal Constitution.

The judgment of the district court is **AFFIRMED** in part and **REVERSED** in part.[21]

---

[21] We grant the City's motions to file additional supplemental appendices.