DOCTOR JOHN'S, INC., a Utah corporation, and John Haltom, Plaintiffs and Counterclaim Defendants,

v.

CITY OF ROY, UTAH; G. Blake Wahlen, in his official capacity as City Manager; Tammy Nelson, in her official capacity as Development Services Manager, Defendants and Counter-Claimant.

No. 1:03–CV–00081 PGC.

United States District Court,
D. Utah,
Northern Division.

Sept. 7, 2004.

W. Andrew McCullough, McCullough & Associates, Midvale, UT, for Plaintiffs/Counter–Defendants.

Robert C. Keller, Jody K. Burnett, WIlliams & Hunt, Salt Lake City, UT, Defendants/Counter–Claimant.

## MEMORANDUM OPINION DENYING MOTIONS FOR SUMMARY JUDGMENT

CASSELL, District Judge.

The parties are before the court on cross-motions for summary judgment. The court finds that the Roy City Ordinance § 17–5 regulating sexually oriented businesses does not violate the First Amendment and that the Doctor John's store located in Roy is subject to the provisions of the Ordinance. As such, summary judgment in favor of the City is hereby GRANTED.

### *BACKGROUND*

Plaintiff, Doctor John's Inc., currently operates about ten stores in the United States selling a variety of merchandise including lingerie, swim wear, lotions, oils, games, roses, stuffed animals, novelty items. Doctor John's also sells "marital aids" and "adult toys" including "vibrators," "dildos," and other masturbation toys, as well as videotapes, DVDs, magazines, and books—some educational and some explicitly sexual in nature.[1]

In February, 2001, Doctor John's, Inc. applied for a general business license for the purpose of opening a store in the City of Roy, Utah. According to the Affidavit of Chris Zimmerman, the Economic and Community Development Director for the City of Roy, Doctor John's representatives informed him at the time of the application

"that the store would sell 'adult' novelties, gifts and videos."[2] The City of Roy did not have a sexually oriented business ordinance but Mr. Zimmerman "informed Dr. John's representatives that the City would closely monitor sales to minors and pornography/obscenity issues. At that time, the owners voluntarily agreed that they would not allow minors in any portion of the store."[3]

The decision to open the store was based on the perceived need for pornography in Utah. According to the deposition of John K. Coil, president of Doctor John's Inc.:

I was in Los Angeles and I read the newspaper on a Sunday morning, and there was an article in there that said that the State of Utah had appointed an anti-porn czar. And I had never been to Utah before. I had no knowledge that Utah existed except seeing it on a map, but I thought to myself and said out loud to those people around me, "There's some uptight people. They need a porn store."[4]

The City of Roy issued a general business license to Doctor John's in February, 2001.

The license states: GENERAL BUSINESS RETAIL SALES—LINGERIE, NOVELTIES, GIFTS & VIDEOS—NO MINORS ALLOWED PER AGREEMENT WITH OWNER.

On May 1, 2001, the City of Roy adopted Ordinance 879, titled "An Ordinance Providing for the Licensing and Regulation of Sexually Oriented Businesses and Employees." Section 1 of the Ordinance sets forth the purpose of the Ordinance and findings demonstrating the need for the

---

1. *See* Deposition of Lorann Blaine at pp. 23–25; *see also, Doctor John's Inc. v. City of Sioux City, Iowa,* 305 F.Supp.2d 1022 (N.D.Iowa, 2004)

2. Affidavit of Chris Zimmerman at ¶ 2.

3. *Id.*

4. Deposition of John K. Coil at pp. 19–20.

ordinance. These findings are based on case law, congressional testimony, and a compilation of studies of the secondary effects of sexually oriented businesses from other jurisdictions. Twenty-five findings are set forth in the Ordinance, the gist of which are that sexually oriented businesses have adverse secondary effects on crime, health, welfare, and morality, and that reasonable licensing procedures are an appropriate way to deal with these secondary effects.

The Ordinance states:

(A) It shall be unlawful for any person to operate a sexually oriented business in the City of Roy without a valid sexually oriented business license.

(B) It shall be unlawful for any person to be an employee ... of a sexually oriented business in the City of Roy without a valid sexually oriented business employee license.

The license fee under the Ordinance for sexually oriented businesses can be no more than $200.00, and annual renewal fees cannot exceed $100.00.

The Ordinance also subjects sexually oriented businesses to certain regulations. For example, operating hours are limited to between 10:00 a.m. and 11:00 p.m., a no loitering policy must be enforced and there must be appropriate lighting around the exterior of the business. More stringent regulations are imposed on businesses which have on-site "viewing rooms" where adult material can be watched. Doctor John's, however, has no such viewing rooms.

Pursuant to the Ordinance, sexually oriented businesses are classified in one of eight categories: (1) adult arcades; (2) adult bookstores, adult novelty stores, adult video stores; (3) adult cabarets; (4) adult motels; (5) adult motion picture theaters; (6) adult theaters; (7) semi-nude model studios; and (8) sexual encounter establishments. The City contends that

Doctor John's falls within category 2 and is therefore subject to the licensing procedure and other regulations of the Ordinance. The Ordinance defines category 2 as follows:

*"Adult Bookstore"*, *"Adult Novelty Store"*, or *"Adult Video Store"* means a commercial establishment which has a significant or substantial portion of its stock-in trade or derives a significant or substantial portion of its revenues or devotes a significant or substantial portion of its interior business or advertising, or maintains a substantial section of its sales or display space to the sale or rental, for any form of consideration, of any one or more of the following:

1. Books, magazines, periodicals or other printed matter, or photographs, films, motion pictures, video cassettes, compact discs, slides, or other visual representations which are characterized by their emphasis upon the exhibition or description of *specified sexual activities* or *specified anatomical areas;*

2. Instruments, devices, or paraphernalia which are designed for use or marketed primarily for stimulation of human genital organs or for sadomasochistic use or abuse of themselves or others.

The Ordinance defines "specified sexual activities" as follows:

*"Specified Sexual Activity"* means any of the following:

1. Sex acts, normal or perverted, including intercourse, oral copulation, masturbation or sodomy; or

2. Excretory functions as part of or in connection with any of the activities described in (1) above.

The Ordinance defines specified anatomical areas as follows:

*"Specified Anatomical Areas"* shall mean human genitals, anus, cleft of the buttocks, or the female breast.

In December, 2002, Chris Zimmerman, who believed that Doctor John's fell within the Ordinance, delivered a copy of the Ordinance to Doctor John's along with application materials for a sexually oriented business license for the year 2003. In response, Doctor John's sent the City a 2003 renewal for a general business license. On February 24, 2003, counsel for Doctor John's sent the City a letter stating:

> We have ... reviewed the Roy City Business License Ordinances, and do not believe this client falls under the definition of a Sexually Oriented Business. Because of our belief and decisions, we applied for the business license we believe is appropriate.
>
> Your City Attorney may be aware of the pending case of *Midvale City v. Haltom, et al.,* now pending before the Utah Supreme Court. [A] decision is expected shortly. There are similar disputes between the City of Midvale and my client over whether a Sexually Oriented Business ordinance is necessary. We fully expect this decision to answer the questions ... It is my suggestion that we hold off a court determination of whether we will need a Sexually Oriented Business [license] to continue doing business in your city, pending the decision of the Utah Supreme Court.

On May 16, 2003, the Utah Supreme Court handed down its decision in *Midvale City Corporation v. John Haltom, et al.*[5] That case involved the Doctor John's store located in Midvale, Utah. The Midvale store had applied for a commercial business license in June of 2000, representing to the city that it would sell such items as candles and lotions. On June 28, 2000, Susan Shreeve, the Midvale City Business License Administrator visited the location and found that some of the products sold were sexually oriented and that she could not issue the license because Haltom had misrepresented the items he was going to sell. On July 29, 2000 the Midvale store began operating without a license. A Temporary Restraining Order was granted against Doctor John's which led to the removal of all inventory covered by the Midvale ordinance. However, inspections revealed that Doctor John's was still selling sexual gratification devices. On November 21, 2000, the trial court determined that the Midvale Doctor John's was operating as a sexually oriented business without the proper license and issued a permanent injunction prohibiting Doctor John's from doing business in Midvale.

Doctor John's appealed to the Utah Supreme Court raising four arguments: First, that Midvale City's sexually oriented business ordinance was unconstitutionally vague or overbroad; second, that injunctive relief was not an appropriate remedy; third, that the ordinance in question was not a valid time, place, and manner restriction; and fourth, that the Utah Constitution offered broader protection than the United States Constitution.

While the issues presented do not exactly mirror the issues in the Midvale case, the Utah Supreme Court's ruling is instructive. The Utah Supreme Court rejected Doctor John's arguments. The court first held that Doctor John's did not have standing to bring a facial challenge to the licensing ordinance based on the First Amendment because "even in the most restrictive light, the statute only regulates the type of license for which one must apply. To mount a facial attack in a prior restraint case, an appellant must demonstrate that the ordinance restricts, or will

---

**5.** 73 P.3d 334 (Utah 2003)., *cert. denied,* — U.S. ——, 124 S.Ct. 826, 157 L.Ed.2d 698 (2003).

restrict, communication in some discernible manner." [6] The court found that Doctor John's had "offer[ed] no evidence that the purpose of the ordinance is 'to restrict stores, as opposed to addressing the secondary effects of such stores.' " [7] The court also rejected Doctor John's argument that the ordinance gave city officials too much discretion since the record showed that "had Dr. John's applied for the correct license he would have received one. While normally, '[a]pplying for and being denied a license ... is not a condition precedent to bringing a facial challenge to an unconstitutional law,' it is a central factor where the law presents no constitutional concerns." [8] Ultimately, the court concluded that Doctor John's

> [H]ad not alleged any harm arising from the licensing proceedings except for the classification of the business as an [S.O.B.]. ... The Midvale ordinance threatens no restriction whatsoever, save for the issuance of a different business license ... In sum, Dr. John's does not have standing to mount a facial attack on the Midvale ordinance because it has not shown that the ordinance has any deterrent effect on expression.[9]

While the standing issue was dispositive, the Utah Supreme Court provided additional reasons for rejecting Doctor John's appeal. The court proceeded to reject Doctor John's vagueness and prior restraint claims, finding that the Midvale ordinance was "unrelated to expression" and that Doctor John's clearly fit within the statute.[10] The language Doctor John's thought unconstitutionally vague was

"principal purpose of the business." The court found prior restraint analysis completely inapplicable. "Prior restraint is only at issue where the government exercises some form of censorship or indirectly represses the communication of ideas before their dissemination." [11] The court further found that "[c]lassification is clearly permissible without implicating any constitutional concerns, 'The mere fact that ... material protected by the First Amendment is subject to ... licensing requirements is not a sufficient reason for invalidating [an] ordinanc[e].' " [12]

In additional dicta, the Utah Supreme Court addressed the prior restraint analysis and found that even if the ordinance applied to speech it still passed constitutional muster since "the ordinance is devoid of any unbridled official discretion" and "there are no temporal ambiguities that might result in unreasonable delaying licensing." [13]

The Utah Supreme Court also rejected Doctor John's contention that injunctive relief was an inappropriate remedy. "Although injunctive relief should be a measure of last resort and require a clear showing of irreparable harm, a municipality may obtain an injunction against a business selling protected material when that business operates without a license or violates some valid regulatory provision." [14]

Finally, the Utah Supreme Court held that the Midvale ordinance was a valid time, place, or manner restriction. Analyzing this issue under the framework set

---

6. *Id.* at 340.

7. *Id.* (citation omitted).

8. *Id.* citing *ACORN v. Municipality of Golden, Co.*, 744 F.2d 739, 744 (10th Cir.1984).

9. *Id.* at 341.

10. *Id.* at 342.

11. *Midvale City*, 73 P.3d at 342–43.

12. *Id.* at 343 quoting *Young v. American Mini Theatres, Inc.*, 427 U.S. 50, 62, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976).

13. *Id.* at 344–45.

14. *Id.* at 347 citing *Ogden City v. Eagle Books, Inc.*, 586 P.2d 436 (Utah 1978).

forth by the Supreme Court in *City of Renton v. Playtime Theatres, Inc.,* the court found that the Midvale ordinance was a valid time, place, or manner restriction and left adequate means for alternative communication. The court found that any intrusions on speech were *de minimis* since the ordinance did not affect the location of the store nor the content of the store but was simply a licensing scheme intended to deal with secondary effects. " 'If States are to be able to regulate secondary effects, then such de minimus intrusions on expression cannot be sufficient to render the ordinance content based.' " [15] The court also noted that while the ordinance did not provide for prompt judicial review, Circuit courts were split over whether such review is constitutionally required and the Supreme Court had yet to resolve the issue. The court chose to follow a ruling of the Sixth Circuit that "any city procedure, however informal, that maintains existence of the status quo pending judicial review, will suffice until the United States Supreme Court devises some way out of this imbroglio." [16]

Notwithstanding the ruling in the *Midvale* case, Doctor John's filed the current action alleging that the City or Roy's Ordinance impinges upon constitutionally protected speech, is void for vagueness, fails to leave open alternative adequate avenues of communication, vests unbridled discretion in licensing officials, and does not provide for prompt judicial review. These are essentially the same arguments rejected in the *Midvale* case. The City of Roy counterclaimed, seeking injunctive relief requiring Doctor John's to comply with the Ordinance.

### DISCUSSION

The court set briefing in this matter on the dispositive issues of whether the Ordinance is unconstitutionally vague and, if not, whether the Doctor John's store in Roy is a sexually oriented business. The court holds that the Ordinance at issue is not susceptible to a facial constitutional challenge. This is true for two reasons: First, with respect to Doctor John's, the Ordinance does not implicate First Amendment concerns, second, the Ordinance sufficiently limits the discretion of local officials and adequately provides for judicial review.

### 1. Standing and Vagueness

Doctor John's does not have standing to bring a facial constitutional vagueness challenge to the Ordinance because the Ordinance does not operate as an improper prior restraint on protected speech. " 'The burden to establish standing rests on the party invoking federal jurisdiction.' " [17] " '[M]ere allegations' of injury, causation, and redressability are insufficient." [18]

To invoke standing under the Article III "cases and controversies" requirement a plaintiff must demonstrate three things: (1) injury-in-fact, (2) causation, and (3) redressability.[19] The Supreme Court has relaxed the standing requirements when plaintiffs are mounting a facial challenge based on the First Amendment.

15. *Id.* at 348 quoting *City of Erie v. Pap's A.M.,* 529 U.S. 277, 294, 120 S.Ct. 1382, 146 L.Ed.2d 265 (2000).

16. *Id.* at 347.

17. *Z.J. Gifts D–4, L.L.C. v. City of Littleton,* 311 F.3d 1220, 1226 (10th Cir.2002) (citation omitted) *reversed on other grounds City of Lit-tleton, Colo. v. Z.J. Gifts D–4, L.L.C.,* —— U.S. ——, 124 S.Ct. 2219, 159 L.Ed.2d 84 (2004).

18. *Z.J. Gifts,* 311 F.3d at 1226 (citation omitted).

19. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).

Standing usually requires that the plaintiff assert an injury to himself, rather than injuries to third parties not before the court. However, this rule is not strictly enforced in the context of facial challenges to laws as violative of the First Amendment, even though a facial challenge to the validity of a statute necessarily entails a challenge to the statute as applied to third parties besides the plaintiff.[20]

However, only "unbridled licensing schemes" are subject to a facial constitutional challenge. The Supreme Court has identified two risks which justify relaxed standing requirements to challenge such licensing schemes. The first risk is that "unbridled licensing schemes" may lead to "self-censorship by speakers in order to avoid being denied a license to speak."[21] The second risk is the "difficulty of effectively detecting, reviewing, and correcting content-based censorship 'as applied' without standards [in the ordinance] by which to measure the licensor's action."[22] As the Supreme Court has explained:

It is when statutes threaten these risks to a significant degree that courts must entertain an immediate facial attack on the law. Therefore, a facial challenge lies whenever a licensing law gives a government official or agency substantial power to discriminate based on the content or viewpoint of speech by suppressing disfavored speech or disliked speakers. This is not to say that the press or a speaker may challenge as censorship any law involving discretion to which it is subject. The law must have a close enough nexus to expression, or to conduct commonly associated with

expression, to pose a real and substantial threat of the identified censorship risks.[23]

Facial challenges are limited to licensing schemes which grant too much discretion to local officials for several good reasons:

Standards provide the guideposts that check the licensor and allow courts quickly and easily to determine whether the licensor is discriminating against disfavored speech. Without these guideposts, *post hoc* rationalizations by the licensing official and the use of shifting or illegitimate criteria are far too easy, making it difficult for courts to determine in any particular case whether the licensor is permitting favorable, and suppressing unfavorable, expression.... In sum, without standards to fetter the licensor's discretion, the difficulties of proof and the case-by-case nature of "as-applied" challenges render the licensor's action in large measure effectively unreviewable.[24]

Thus, it is only when the licensing statutes grant broad discretion to licensing officials that "the risks are sufficiently great" that the remedy should be "to strike the licensing law in its entirety" so that the "law cannot be applied to anyone."[25] Where the risks of prior restraint are not present, courts should review statutes on an as-applied basis.

Doctor John's facial challenge fails for two reasons: First, the Ordinance does not seek to suppress speech based on content or viewpoint; and second, the Ordinance does not give licensors unbridled discretion. The Ordinance passed by Roy is a rather innocuous scheme aimed at second-

---

**20.** *Z.J. Gifts,* 311 F.3d at 1226.

**21.** *City of Lakewood v. Plain Dealer Pub. Co.,* 486 U.S. 750, 759, 108 S.Ct. 2138, 100 L.Ed.2d 771 (1988).

**22.** *Id.*

**23.** *Id.*

**24.** *Id.* at 758–59, 108 S.Ct. 2138.

**25.** *The Tool Box v. Ogden City Corp.,* 355 F.3d 1236, 1241 (10th Cir.2004) (en banc).

ary effects and not at the content of speech and does not implicate either of the concerns given by the Supreme Court for relaxing the standing requirement.

The standards by which a license is either granted or denied under the Ordinance at issue are objective, easily applied, easily reviewed by courts, and give very little discretion to licensing officials. Applicants for a sexually oriented business license are immediately granted a temporary license upon completing the application. A final decision on granting a permanent license is required within forty days. The City "shall approve" the license unless (1) the applicant is less than eighteen years of age; (2) the applicant fails to provide the appropriate information on the application form, such as whether the applicant has previously pled guilty to certain specified criminal activity or has had a license for a sexually oriented business denied, suspended or revoked within the two previous years; (3) the license fee has not been paid; (4) an applicant has been convicted of specified criminal activity; or (5) the premises is not in compliance with the configuration requirements for the interior of sexually oriented businesses. "Specified criminal activity" is thoroughly defined in the ordinance, as are the requirements for the interior configuration of sexually oriented businesses. Essentially the same objective standards are applied to employee licenses.

The Ordinance also sets forth detailed grounds for revocation or suspension of a license and provides for notice and a speedy hearing when the City believes a license should be denied, revoked, or suspended. Finally, when a license is denied, suspended, or revoked, the Ordinance allows for appeal to a court of competent jurisdiction and "the City shall immediately issue the aggrieved party a Provisional license [and] allow the aggrieved party to continue operation" until a court decision is issued. According to the Tenth Circuit, the Supreme Court has allowed licensing of adult establishments "so long as two classic evils of prior restraints are not present.... First, the licensing scheme may not vest unbridled discretion in the government officials charged with granting or denying the license ... Second, the licensing scheme may not allow the decisionmaker unlimited time to decide on matters affecting the license...."[26] The licensing scheme must also provide for "prompt judicial review of the denial of a license."[27] However, "[w]here the regulation simply conditions the operation of an adult business on compliance with neutral and nondiscretionary criteria ... and does not seek to censor content, an adult business is not entitled to an unusually speedy judicial decision ..."[28]

The Ordinance at issue here suffers from none of the evils of prior restraint. The objective criteria are not difficult for an applicant to meet and present little opportunity for abuse. Further, the criteria are not based on content since, once an applicant has met the criteria for a license he may have as much or as little adult-oriented material as he chooses. The Ordinance merely "regulates the type of license for which one must apply."[29] In addition, even were a city official to abuse his discretion in applying these objective criteria, the Ordinance requires a provisional license to be issued until the official's actions can be reviewed by a court.

**26.** *Essence, Inc. v. City of Federal Heights,* 285 F.3d 1272, 1290 (10th Cir.2002), *cert. denied,* 537 U.S. 947, 123 S.Ct. 411, 154 L.Ed.2d 291 (2002).

**27.** *Id.*

**28.** *Z.J. Gifts,* —— U.S. at ——, 124 S.Ct. at 2226.

**29.** *Midvale,* 73 P.3d at 340.

This means that the opportunity for court review exists before any adverse affects can take place. Indeed, even if Doctor John's had been denied a sexually oriented business license, rather than choosing not to pursue one, it could have remained in business until a court ruled on the denial of its license. Doctor John's cannot manufacture standing to challenge the Ordinance simply by objecting to the type of license the City wishes to give it. To repeat the legal standard, facial challenges to the constitutionality of licensing schemes such as the Ordinance at issue in this case are only appropriate where the scheme places too much discretion in licensing officials.[30] That is clearly not the case here.

The Tenth Circuit addressed a very similar ordinance in *Z.J. Gifts D–4, L.L.C. v. City of Littleton*[31] The ordinance in that case defined an "adult bookstore, adult novelty store, or adult video store" as a business that "devotes a significant or substantial portion" of its floor space, inventory, or advertising to adult materials, or that obtains "a significant or substantial portion" of its revenue from those materials.[32] The Ordinance in that case set forth licensing criteria very similar to the criteria at issue here. The Tenth Circuit found that the plaintiff did not have standing to bring a facial vagueness challenge to the ordinance:

[A]s the [Supreme] Court in *Young* explained, "if the statute's deterrent effect on legitimate expression is not both 'real and substantial,' and if the statute is 'readily subject to a narrowing construction by the state courts,' the litigant is not permitted to assert the rights of third parties." ... In *Young*, the Court concluded that the ordinance in question did not have a "real and substantial" deterrent effect on legitimate expression because "there is surely a less vital interest in the uninhibited exhibition of material that is on the borderline between pornography and artistic expression than in the free dissemination of ideas of social and political significance." The same rationale applies equally to the present case. Adult businesses covered by Littleton's ordinance are, by definition, likely to carry materials that border on pornography. Stated simply, in light of *Young*, Littleton's ordinance does not have a "real and substantial" deterrent effect upon "legitimate expression."[33]

While the Tenth Circuit found that the plaintiff did not have standing to bring a vagueness challenge, the court did find the Littleton ordinance unconstitutional because it did not provide for a prompt judicial decision when a license was denied. The Supreme Court reversed the holding with reasoning very much applicable to this case. The court concluded that because "the licensing scheme applies reasonably objective, nondiscretionary criteria unrelated to the content of the expressive materials that an adult business may sell or display," and because the "objective criteria are simple enough to apply and their application simple enough to review that their use is unlikely in practice to suppress totally the presence of any specific item of adult material in the ... community," the adult business licensing scheme "does 'not present the grave dangers of a censorship

---

30. *See FW/PBS, Inc. v. City of Dallas,* 493 U.S. 215, 223, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990) *aff'd in part, vacated on other grounds in part,* 493 U.S. 215, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990) (facial challenge appropriate where "licensing scheme vests unbridled discretion in the decisionmaker").

31. 311 F.3d 1220 (10th Cir.2002).

32. *Z.J. Gifts,* 311 F.3d at 1228.

33. *Id.* at 1229 (citations omitted).

system.'"[34] Indeed, the Supreme Court classified the Littleton ordinance, which uses the exact language as is at issue here, as one that "simply conditions the operation of an adult business on compliance with neutral and nondiscretionary criteria" and that "does not seek to censor content...."[35]

It is true that the City of Roy's statute gives city officials discretion in classifying a business based on whether the business has a "significant or substantial" amount of sexually oriented materials, but the effects of classification do not implicate First Amendment concerns—as evidenced by the Tenth Circuit and Supreme Court opinions in *Z.J. Gifts* which had nothing to say about discretion in classification. This discretion goes to what type of license to grant, not whether to grant or deny a license. Thus, it can hardly be used as a means of censorship and is not the type of unbridled discretion which "has the potential for becoming a means of suppressing a particular point of view."[36] Classification as a sexually oriented business under the license "threatens no restriction whatsoever, save for the issuance of a different license. '[T]he city does not exercise discretion by passing judgment on the content of any protected speech. Rather, the city reviews the general qualifications of each license applicant, a ministerial action that is not presumptively invalid.'"[37]

This presents a second reason for denying Doctor John's standing to challenge the Ordinance—Doctor John's has not identified any injury to itself. "[T]he over-

breadth doctrine 'does not eliminate the need for the plaintiff to demonstrate its own cognizable injury in fact.'"[38] "[T]his requirement is satisfied where the plaintiff is engaged 'in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution.'"[39] Doctor John's argues that it is not a sexually oriented business and does not desire to be classified as a sexually oriented business but does not identify an "invasion of a legally-protected interest that is (a) concrete and particularized and (b) actual or imminent, i.e., not conjectural or hypothetical."[40] Doctor John's argues that its First Amendment rights are being violated because the material in its store is presumptively entitled to protection under the First Amendment. However, registration as a sexually oriented business would have no effect on the content of the store. Doctor John's is not prohibited by the Ordinance from engaging in any activity. Its only complaint is that the City wishes it to do business under a sexually oriented business license rather than a general business license. The additional burdens imposed by classification as a sexually oriented business are unrelated to speech and content and are fairly minimal, especially since Doctor John's has been exempted from the zoning provision. The only apparent additional burdens imposed on Doctor John's are a somewhat extended application process (during which it is free to remain in business), a minor limitation on hours of operation, the requirement to

---

**34.** *Id.* at 2225 (citations omitted).

**35.** *Id.*

**36.** *Heffron v. International Soc. for Krishna Consciousness, Inc.,* 452 U.S. 640, 649, 101 S.Ct. 2559, 69 L.Ed.2d 298 (1981).

**37.** *Midvale,* 73 P.3d at 341 (quoting *FW/PBS, Inc. v. City of Dallas,* 493 U.S. at 229, 110 S.Ct. 596).

**38.** *Z.J. Gifts,* 311 F.3d at 1227 (quoting *National Council for Improved Health v. Shalala,* 122 F.3d 878, 883 (10th Cir.1997)).

**39.** *Z.J. Gifts,* 311 F.3d at 1227 (quoting *Babbitt v. United Farm Workers National Union,* 442 U.S. 289, 99 S.Ct. 2301, 60 L.Ed.2d 895 (1979)).

**40.** *Lujan,* 504 U.S. at 560, 112 S.Ct. 2130.

place some extra lighting on the exterior of the business, and the requirement to enforce a no loitering provision. As such, it is clear that Doctor John's objection in this case is to the label of sexually oriented business. In the absence of some limitation on protected speech, there is no constitutionally protected right to obtain a general business license over a sexually oriented business license. As a result, this court finds that Doctor John's does not have standing to mount a facial constitutional challenge to the Ordinance.

▆ Even if Doctor John's had standing to challenge the Ordinance at issue, the court cannot conclude that it is unconstitutionally vague. This is true for many of the same reasons Doctor John's does not have standing because, as the Supreme Court has explained, "if the statute's deterrent effect on legitimate expression is not both 'real and substantial,' and if the statute is 'readily susceptible to a narrowing construction by the court,' the litigant is not permitted to assert the rights of third parties." [41] The court has already determined that the Ordinance does not present a "real and substantial" threat to legitimate expression. Further, the Tenth Circuit has already determined that the exact language at issue here—"significant and substantial"—is readily susceptible to a narrowing construction by the courts.[42] One "common method" of narrowing the language "has been to develop a percentage that will act as a guide as to what constitutes 'significant or substantial.'" [43] The court did not say that this was the only method or even a necessary method. Doctor John's argues that the Utah Supreme Court has not narrowed this language, and has refused to set a percentage

by which "significant or substantial" can be measured. However, the standard is not whether a court has narrowed the language but whether the language is readily susceptible to being narrowed. And, in *Z.J. Gifts* the Tenth Circuit concluded that the exact language at issue here is "easily susceptible of a narrowing construction." [44]

## 2. Prior Restraint

▆ In *Z.J. Gifts,* the Tenth Circuit held that while the plaintiff did not have standing to bring a facial vagueness challenge to the Littleton sexually oriented business licensing ordinance, the plaintiff could challenge the ordinance as an invalid prior restraint. The Tenth Circuit has "concluded that 'licensing of adult entertainment establishments' must be analyzed as a prior restraint." [45]

As noted above, the Ordinance at issue here presents none of the threats of an invalid prior restraint. As the Tenth Circuit has explained:

The Supreme Court has allowed licensing of adult entertainments so long as two classic evils of prior restraints are not present. First, the licensing scheme may not vest unbridled discretion in the government officials charged with the responsibility of granting or denying the license. Second, the licensing scheme may not allow the decisionmaker unlimited time to decide on matters affecting the license; otherwise, there is the "risk of indefinitely suppressing speech." To ensure that the decision time is limited, certain procedural safeguards are required.

In the adult business licensing context, at least two procedural safeguards are

---

41. *Young,* 427 U.S. at 60, 96 S.Ct. 2440.

42. *Z.J. Gifts,* 311 F.3d at 1229.

43. *Id.*

44. *Id.*

45. *Id.* at 1231 (quoting *Essence,* 285 F.3d at 1289–90).

essential: (1) the licensor must make the decision whether to issue the license within a specified and reasonable time period, (2) there must be opportunity for prompt judicial review of a license.[46]

The Ordinance at issue here complies with these requirements. First, completing a license application is not an onerous task. The most burdensome requirement is that the license be accompanied by a sketch or diagram of the premises, including a statement of total floor space. The diagram does not have to be professionally prepared. Businesses which are going to offer on-site viewing must make the diagram more detailed. Two points make such a requirement innocuous. First, the time involved in drafting such a diagram is minimal. Second, such a requirement does not present the City with the opportunity to indefinitely delay the application procedure. In *Z.J. Gifts*, for example, the Tenth Circuit was concerned that applicants had to obtain a written statement from the City's Zoning Official that the proposed location was in compliance with the zoning restrictions in the ordinance. In addition, the ordinance placed no time limit on the Zoning Official. There is no such provision in the Ordinance at issue here.

Most troubling to the Tenth Circuit in *Z.J. Gifts* was the fact that the ordinance did not place a time limit on when the license must either be issued or denied. In contrast, the Ordinance at issue here requires that

> [U]pon the filing of a completed application . . . Roy City Development Services shall *immediately* issue a Temporary License to the applicant, which Temporary License shall expire upon the final

decision of the City to deny or grant the license. Within forty (40) days of the initial filing date of the completed application, the City shall issue a license to the applicant or issue to the applicant a letter of intent to deny the application.

As set forth above, the Ordinance also provides easily-applied, objective criteria to city officials determining whether a license should be granted or denied.

The final requirement is the necessity of providing for prompt judicial review. In *Z.J. Gifts*, the Tenth Circuit found that the Littleton ordinance was unconstitutional because it did not provide for a prompt judicial *decision* on the merits of granting or denying the license. The Supreme Court reviewed only this holding of the Tenth Circuit and reversed. As described above, the Littleton ordinance at issue was very similar to the Ordinance at issue here. The Supreme Court first noted that the ordinance "does not seek to *censor* material" because its licensing scheme "applies reasonably objective, nondiscretionary criteria unrelated to the content of the expressive materials. . . ."[47] Because of this, the Supreme Court noted that the licensing scheme simply "does 'not present the grave dangers of a censorship system.'"[48] The Court's holding was that "[w]here . . . the regulation simply conditions the operation of an adult business on compliance with neutral and nondiscretionary criteria . . . and does not seek to censor content, an adult business is not entitled to an unusually speedy judicial decision. . . ."[49] Thus, the requirement of a prompt judicial decision is relaxed in cases such as this where the licensing scheme provides objective neutral criteria and does not present the dangers of censorship.

---

**46.** *Essence*, 285 F.3d at 1289–90.

**47.** *Z.J. Gifts*, —— U.S. at ——, 124 S.Ct. at 2225.

**48.** *Id.* (citations omitted).

**49.** *Id.*

Perhaps even more important to this case, pursuant to the Ordinance, when a license is denied, revoked, or suspended, the applicant "shall have the right to appeal such action to a court of competent jurisdiction" and when such an action is filed "the City shall immediately issue the aggrieved party a Provisional License" which "shall allow the aggrieved party to continue operation of the sexually oriented business...." Thus, no matter how prompt or delayed judicial review is, the business is allowed to remain in operation. Not only does this statute not constitute a prior restraint, it constitutes no restraint at all prior to judicial review.

In sum, the Ordinance at issue presents none of the dangers of prior restraint. The Ordinance sets forth application procedures that are neither time-consuming nor costly, provides easily-applied objective criteria for the issuance of a license, requires a temporary license to be immediately issued upon the completion of an application, mandates a final decision to be made within forty days, and provides for a provisional license when an application is denied or a license revoked or suspended. The Ordinance is a well-drafted way for the City to deal with the secondary effects of sexually oriented businesses while protecting First Amendment principles.

**3. Time/Place/Manner Restrictions**

▇ Doctor John's next attacks the Ordinance as being an invalid time-place-manner restriction. In particular, Doctor John's argues that the Ordinance is not sufficiently narrowly-tailored because it is not justified by the "secondary effects" cited by the City. Doctor John's argues that this is particularly true with respect

to its business because it does not offer any onsite entertainment. Doctor John's also argues that the "significant or substantial" language sets too low a threshold and is therefore not narrowly tailored.

It is important to clarify what Doctor John's is challenging. Challenges to time-place-manner restrictions usually focus on the zoning provisions of adult-business licensing schemes. However, Doctor John's does not have standing to challenge the zoning ordinance because it does not apply to the store. In *Essence, Inc. v. City of Federal Heights*, the Tenth Circuit rejected a plaintiff's challenge to the disability provisions of an adult-business licensing scheme because there was no allegation that any of the plaintiff's were subject to the provisions.[50] As the City concedes, Doctor John's is not affected by the zoning provision of this Ordinance.

Doctor John's is affected by the provision of the Ordinance limiting the hours of operation of sexually-oriented businesses. However, nothing in the record reveals how, or even if, this provision has any effect on Doctor John's current operating hours. In sum, Doctor John's has alleged no injury-in-fact with respect to this provision. Nevertheless, the court will presume that this provision does affect Doctor John's and will proceed accordingly.

The Ordinance at issue is content-neutral and thus subject to intermediate scrutiny. "The Supreme Court has held that city ordinance limiting the locations of adult-film theatres for the purpose of avoiding their secondary effects ... rather than for the purpose of regulating the content of the films, are content-neutral, and can be constitutional as time-place-manner restrictions."[51] In *Z.J. Gifts D–2,*

**50.** 285 F.3d at 1281.

**51.** *The Tool Box,* 355 F.3d at 1240; *see also City of Renton v. Playtime Theatres, Inc.* 475 U.S. 41, 47, 106 S.Ct. 925, 89 L.Ed.2d 29

(1986) (Zoning ordinance is content-neutral where it "is not aimed at the content of the speech but rather at the secondary effects of

*L.L.C. v. City of Aurora,* 136 F.3d 683 (10th Cir.1998) the Tenth Circuit rejected the argument that adult-business licensing schemes should be treated as content-based regulations subject to the most exacting scrutiny:

> Content-based restrictions on speech, those which "suppress, disadvantage, or impose differential burdens upon speech because of its content," are subject to "the most exacting scrutiny." Conversely, content-neutral regulations "pose a less substantial risk of excising certain ideas or viewpoints from the public dialogue" because they are unrelated to the content of speech. Content-neutral regulations are accordingly subject to intermediate scrutiny . . . .
>
> In determining whether a regulation is content-neutral, "[t]he government's purpose [in enacting the regulation] is the controlling consideration." If the regulation "serves purposes unrelated to the content of expression" it is considered neutral, "even if it has an incidental effect on some speakers or messages but not others."
>
> The Supreme Court has long held that city zoning ordinances which place limits on the location of adult uses are valid exercises of the city's police power . . . Though such regulations treat adult uses differently from other uses based on their sexually explicit nature, they are "designed to prevent crime, . . . maintain property values, . . . and preserve . . . the quality of urban life." Because ordinances zoning adult uses are intended to curb the secondary effects of those uses on surrounding communities and burden free speech interests only incidentally, they are generally reviewed as

content-neutral regulations subject to a less stringent standard of review.[52]

The record here clearly establishes that the City's purpose in enacting the Ordinance was to deal with the secondary effects of sexually-oriented businesses. The Ordinance itself states,

> It is the purpose of this ordinance to regulate sexually oriented businesses in order to promote the health, safety, morals, and general welfare of the citizens of the City, and to establish reasonable and uniform regulations to prevent the deleterious secondary effects of sexually oriented businesses within the City.

The Ordinance then sets forth a number of findings, based on the studies listed, concerning the secondary effects of sexually oriented businesses. The court thus finds that the Ordinance is aimed at the secondary effects of sexually oriented businesses and should therefore be reviewed as a content-neutral regulation subject to intermediate scrutiny.[53]

Content-neutral time-place-manner restrictions are reviewed under the framework set forth by the Supreme Court in *City of Renton v. Playtime Theatres, Inc.*[54] Under *Renton,* ordinances such as this one survive constitutional scrutiny if (1) they are narrowly tailored to serve a significant government interest, and (2) they leave open "reasonable alternative avenues of communication." [55]

■ Doctor John's does not contend that the Ordinance does not leave open reasonable alternative avenues of communication. Indeed, Doctor John's itself is free to obtain a sexually oriented business

---

[the sexually-oriented business] on the surrounding community").

**52.** 136 F.3d at 686 (citations omitted).

**53.** *Z.J. Gifts D–4,* 311 F.3d at 1239 n. 15.

**54.** 475 U.S. 41, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986).

**55.** *Id.* at 45, 53, 106 S.Ct. 925.

license and sell as much adult material as it chooses in the very location it now occupies. The only issue before the court is whether the Ordinance is narrowly tailored to prevent the secondary effects of sexually oriented businesses.

The Supreme Court has stated that "[a] city's 'interest in attempting to preserve the quality of urban life is one that must be accorded high respect.' "[56] The Tenth Circuit has recognized the "significant" interest cities have in regulating sexually oriented businesses.[57] Nevertheless, Doctor John's wishes this court to distinguish between the City's interest in regulating sexually oriented business which offer on-site entertainment versus those which only offer off-site entertainment. The Fifth Circuit made this distinction in *Encore Videos, Inc. v. City of San Antonio.*[58] However, in *Z.J. Gifts D–2,* the Tenth Circuit specifically rejected this distinction as "constitutionally irrelevant" and stated that its analysis would be "unaffected" by such a distinction.[59] Moreover, a review of the report of many of the studies relied upon by the City reveals that the distinction has apparently not been considered significant.

Nor has Doctor John's made any serious showing that the studies relied upon by the City were not appropriate. The Ordinance cites eighteen studies from different cities reviewed by the City, as well as other materials. The dates of the studies reveal that they are not so old as to be outdated. Five of the studies were done within the last decade. It is clear from the record that the City "reasonably believed" the studies were "relevant to the problem" the city was addressing.[60] The detailed findings of the Ordinance reveal that these studies were relied upon in drafting the licensing scheme. The Ordinance also cites a large body of case law where courts have accepted the findings of such studies. Indeed, this issue has been litigated so often now that the secondary effects of sexually oriented businesses seem to be well-established and the requirement that cities find and rely on such studies may now be easily satisfied. At any rate, it is clear that the City complied with this requirement and was justified in enacting the Ordinance based on the hearings it held and its review of the studies. It is well established in the case law that cities are not required to do their own studies but may rely on studies from other cities. A city "need not wait for sexually oriented businesses to locate within its boundaries, depress property values, increase crime, and spread sexually transmitted diseases before it regulates those businesses. It may rely on the experience of other cities to determine whether the harms presented by sexually oriented businesses are real and should be regulated."[61]

Finally, it may be true that not all sexually oriented businesses present precisely the same problems for cities. To this end, Doctor John's notes that not all of the

**56.** *City of Renton,* 475 U.S. at 50, 106 S.Ct. 925 (quoting *Young,* 427 U.S. at 71, 96 S.Ct. 2440).

**57.** *See Z.J. Gifts D–2,* 136 F.3d at 686.

**58.** 330 F.3d 288, 295 (5th Cir.2003), *cert. denied,* ―― U.S. ――, 124 S.Ct. 466, 157 L.Ed.2d 372 (2003) ("Off-site businesses differ from on-site ones, because it is only reasonable to assume that the former are less likely to create harmful secondary effects. If consumers of pornography cannot view the materials at the sexually oriented establishment, they are less likely to linger in the area and engage in public alcohol consumption and other undesirable activities.").

**59.** 136 F.3d at 688.

**60.** *City of Renton,* 475 U.S. at 51–52, 106 S.Ct. 925.

**61.** *Z.J. Gifts D–2,* 136 F.3d at 688 (citing *City of Renton,* 475 U.S. at 51–52, 106 S.Ct. 925).

findings in the Ordinance apply to Doctor John's. Particularly, some of the findings relate only to businesses which offer on-site entertainment. However,

> [T]ime, place or manner regulations on protected speech must be narrowly tailored, but "need not be the least restrictive or least intrusive means of doing so." ... Instead, "[s]o long as the means chosen are not substantially broader than necessary," an ordinance is narrowly tailored if the regulation "promotes a substantial governmental interest that would be achieved less effectively absent the regulation." ... The [Supreme] Court's interpretation of the narrow tailoring prong in time, place and manner analyses recognizes the judiciary's limited role in reviewing content-neutral limitations on speech. "It is not [the court's] function to appraise the wisdom of [the city's] decision[.]"[62]

The court is satisfied that the Ordinance is narrowly tailored toward a substantial government interest, that the City relied on valid studies in enacting the ordinance, and that the Ordinance leaves open ample alternative communication channels. Further, as applied to Doctor John's, the Ordinance does nothing more than prohibit opening before 10:00 a.m. or closing later than 11:00 p.m. as well as requiring exterior lighting and enforcement of a no loitering provision.[63] As such, the court finds that the Ordinance is a valid use of the City's legislative powers and does not run afoul of the Constitution.

### 4. Civil Disability Provisions of the Ordinance

■ The next issue presented is a challenge by plaintiff John Haltom to the disability provisions of the Ordinance. The Ordinance also requires employees to obtain a license to work in sexually oriented businesses. Issuance of such a license is governed by essentially the same procedures as issuance of a license for the business. An employee license may be denied if the "applicant has been convicted of a specified criminal activity, as defined in this ordinance...."

The Ordinance defines "specified criminal activity" as"

> 1. Prostitution or promotion of prostitution; dissemination of obscenity or illegal pornography; sale, distribution or display of harmful material to a minor; sexual performance by a child; possession or distribution of child pornography; lewdness; sexual battery; rape; indecent exposure; indecency with a child; engaging in organized criminal activity relating to a sexually oriented business; sexual assault; molestation of a child; or distribution of a controlled substance; criminal attempt, conspiracy or solicitation to commit any of the foregoing offenses or offenses involving the same elements from any jurisdiction regardless of the exact title of the offense; for which;
>
> a. Less than two years have elapsed since the date of conviction or the date of release from confinement imposed for the conviction, whichever is the later date, if the conviction is of a misdemeanor offense;
>
> b. Less than five years have elapsed since the date of conviction or the date of release from confinement for the conviction, whichever is the later date, if the conviction is of a felony offense; or
>
> c. Less than five years have elapsed since the date of the last conviction or the date of release from confinement for

---

**62.** *Id.* at 689, 106 S.Ct. 925 (citations omitted).

**63.** *Schultz v. City of Cumberland*, 228 F.3d 831, 846 (7th Cir.2000) (regulation of operating hours of sexually oriented businesses "is a classic time, place or manner restriction").

the last conviction, whichever is the later misdemeanor offenses occurring within any 24–month period.

To have standing to challenge provisions such as these the plaintiff must show (1) a conviction of one or more of the enumerated crimes, and (2) that the conviction or release from confinement occurred recently enough to disable the applicant under the ordinance.[64] Plaintiff John Haltom was recently convicted in Utah of selling pornographic materials to a minor and he has three convictions in Nebraska for distributing obscene materials. The Utah conviction appears to be recent enough to fall within the disability provision of the Ordinance. The issue before the court, therefore, is whether the disability provision operates as an improper prior restraint on constitutionally protected activity.

Assuming the civil disability provision does burden speech, which is not at all clear, the court must address what standard of review to apply. Plaintiff may be correct that the provision acts as a prior restraint. However, that argument goes more to the judicial review provisions which the court has already thoroughly addressed above and found adequate to satisfy constitutional standards.[65] The Tenth Circuit has not expressly addressed this issue. A review of the case law, however, reveals the general rule that "courts have held that a municipality may deny licensure 'when an individual has been convicted of specified crimes that relate to the

"crime-control intent" of the ordinance,'" but that courts have "struck down such disabling provisions where convictions for the crime in question have no demonstrable relation to the purpose of the ordinance."[66]

The Sixth Circuit has addressed a civil disability provision similar to the one before the court. In *Deja Vu of Nashville, Inc. v. Metropolitan Gov't of Nashville*,[67] the Circuit applied the test set forth by the Supreme Court in *United States v. O'Brien*.[68] To withstand scrutiny under *O'Brien*, the Ordinance must (1) be within the City's constitutional power, (2) further a substantial government interest, (3) the interest must be unrelated to speech, and (4) the Ordinance may place only an "incidental burden of First Amendment freedoms that is no greater than is essential to further the government interest."[69] In *Deja Vu*, the Sixth Circuit found that the city had met these requirements, finding that the ordinance was validly enacted and was in furtherance of a substantial government interest unrelated to speech, namely, controlling the same secondary effects the entire licensing scheme was aimed at. The court then considered whether the ordinance placed only an incidental burden on speech and concluded:

The Ordinance's civil disabilities provisions serve to weed out those applicants most likely to engage in the type of criminal behavior that the Ordinance seeks to redress by temporarily disquali-

---

64. *See Z.J. Gifts D–4*, 311 F.3d at 1228.

65. *Deja Vu of Nashville, Inc. v. Metropolitan Government of Nashville and Davidson County, Tennessee*, 274 F.3d 377, 391 (6th Cir. 2001), *cert. denied*, 535 U.S. 1073, 122 S.Ct. 1952, 152 L.Ed.2d 855 (2002) (prior restraint argument "more properly applies to our examination of the Ordinance's mechanisms for providing prompt judicial review rather than our decision of which level of constitutional scrutiny to apply").

66. *Brownell v. City of Rochester*, 190 F.Supp.2d 472, 496 (W.D.N.Y.2001) (quoting *Tee & Bee, Inc. v. City of West Allis*, 936 F.Supp. 1479, 1489 (E.D.Wis.1996)).

67. *Id.*

68. 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968).

69. *Id.* at 377, 88 S.Ct. 1673.

fying those who have recently committed such acts from working for sexually oriented establishments, or alternatively, from declaring any sexually oriented establishment closely associated with such an individual ineligible to operate. In light of the temporary nature of the ban and the narrow reach of the provisions (applying only to those who have committed a felony sex crime within the last five years or a misdemeanor sex crime within the last two years), we do not find that these provisions violate the Constitution.[70]

The Sixth Circuit's opinion suggests that two factors are particularly important in drafting civil disability provisions. First, the court noted the temporary nature of the disability. Second, the court noted that the ordinance was narrowly tailored to the types of crimes typically associated with sexually oriented businesses.

The Fifth Circuit addressed this issue in *FW/PBS v. City of Dallas.*[71] The provision at issue in that case was again very similar to the provision challenged here, including the list of disabling crimes (after the district court struck out crimes it felt unrelated to the purposes of the ordinance). The Fifth Circuit struggled with the appropriate standard of review, but noted that the provision would pass even strict scrutiny since "by documenting the strong relationship between sexually-oriented businesses and sexually related crimes, the City established a compelling justification for barring those prone to such crimes from the management of these businesses."[72] The court also noted the "well-accepted notion that government may attach to criminal convictions disabili-

ties aimed at preventing recidivism."[73] However, the court did not think strict scrutiny was appropriate and instead held "that only a substantial relationship need be shown between the conviction and the evil sought to be prevented. The courts have not engaged in such strict scrutiny and have not otherwise required compelling necessity to justify other occupational bars attending a criminal conviction, including those laced with activity protected by the First Amendment...."[74] In the end, the Fifth Circuit upheld the provision as narrowly tailored to achieve legitimate ends.

> Ineligibility results only from offenses that are related to the kinds of criminal activity associated with sexually oriented businesses. In addition, the Ordinance permits licensing of former offenders after enough time has passed to indicate they are no longer criminally inclined and takes into account the seriousness of applicant's offenses. The relationship between the offense and the evil to be regulated is direct and substantial.[75]

On appeal the Supreme Court held that none of the petitioners had standing to challenge the disability provision. However, the logic of the Fifth Circuit's ruling seems sound.

Several district courts have also followed the approach used by the Fifth and Sixth Circuits. In *Brownell v. City of Rochester,*[76] the District Court for the Western District of New York removed from the list of disabling crimes those "non-sex crimes" which were unrelated to the secondary effects the city sought to prevent but upheld the provision.[77] It explained:

---

**70.** *Deja Vu,* 274 F.3d at 392.

**71.** 837 F.2d 1298 (5th Cir.1988).

**72.** *Id.* at 1305.

**73.** *Id.*

**74.** *Id.*

**75.** *Id.*

**76.** 190 F.Supp.2d 472 (W.D.N.Y.2001).

**77.** *Id.* at 496.

Convictions for the remaining crimes— prostitution offense, obscenity and related offenses, sexual performance by a child, possession or distribution of child pornography, offenses against public sensibilities, sex offenses, and unlawfully dealing with a child—are sufficiently related to the kinds of criminal activity associated with sexually oriented businesses to provide a legitimate basis for denying a license.[78]

The Seventh Circuit struck down an ordinance challenged by a nude dancer which disqualified license applicants who had been convicted of certain enumerated crimes.[79] The court labeled the ordinance a content-based restriction, but then seemingly applied the *Renton* test, which applies to content-neutral time, place, or manner restrictions. The Seventh Circuit's apparent holding was that the ordinance "fail[s] to provide alternative channels for communication." [80] The court also stated that "[t]he First Amendment does not allow licensing provisions based on criminal history that 'totally prohibit certain classes of persons' from First Amendment expression." [81]

Even assuming the Seventh Circuit applied the appropriate analysis, it is not clear to this court that the civil disability provision at issue here fails to leave open alternative means of communication. First, the Ordinance only prohibits a tiny class of people from working in sexually oriented businesses. The constitutionally protected material will still be readily available to the public. Second, as to individual persons affected by the Ordinance, the provision prohibits only their employment in sexually oriented businesses.

Such persons are still free to disseminate pornographic material, for example, by setting up a website. Therefore, the provision can be easily seen as merely a content-neutral restriction on the manner and location of distribution—the goal being to eliminate the secondary effects of sexually oriented businesses by preventing those who have been guilty of crimes associated with those secondary effects from being employed on the premises. One of the findings of the City Council in adopting the ordinance was that the licensing procedure was a valid means of preventing the secondary effect of the distribution of pornography to minors—the crime for which Mr. Haltom was recently convicted. The Council also found that the "fact that an applicant for an adult use has been convicted of a sexually related crime leads to the rational assumption that the applicant may engage" in the conduct again.

Mr. Haltom also points the court to the Fifth Circuit case of *Fernandes v. Limmer*, 663 F.2d 619 (5th Cir.1981). There the court concluded that an ordinance prohibiting persons "convicted of a felony or other offense of moral turpitude" from distributing literature at the Dallas airport was unconstitutional. The court described the provision as an attempt "to deny an applicant total access to the airport grounds if he has been convicted of a felony or other offense of moral turpitude." [82] The goal of the provision was to prevent fraud. The court found that the airport "has not shown any 'impressive' evidence to sustain this provision" but was merely engaging in "assumptions." [83]

**78.** *Id.; see also Tee & Bee, Inc.,* 936 F.Supp. at 1489 (upholding ordinance denying licensure based on prior convictions).

**79.** *Schultz v. City of Cumberland,* 228 F.3d 831 (7th Cir.2000).

**80.** *Id.* at 852.

**81.** *Id.*

**82.** *Id.* at 629.

**83.** *Id.* at 630.

Several important factors distinguish *Fernandes* from this case. First, the petitioners in *Fernandes* were engaged in "pure speech" in a public forum of the kind which ordinarily receives the highest protection. By contrast, employment in a sexually oriented business is at the very least speech mixed with conduct which " 'rests at a pronounced distance from the "pure speech" at the core of the First Amendment.' "[84] Indeed, nude dancing by employees of sexually oriented businesses "falls only within the outer ambit of the First Amendment's protection."[85] As such, the provision here is not subjected to the same type of scrutiny as the provision at issue in *Fernandes*. Second, the respondents in *Fernandes* had made no showing that the prohibition in any way prevented fraud. By contrast, the Ordinance at issue here has detailed findings and the civil disability provision is directly related to the types of secondary effects the City wishes to control. Most importantly, as noted above, the Fifth Circuit addressed the issue at hand directly in *FW/ PBS, Inc. v. City of Dallas*, and did not follow *Fernandes*. As such, this court finds other precedent more directly on point.

From the cases cited above it can be gleaned that the rule of law that disability provisions denying licensure to work in sexually oriented businesses based on prior criminal convictions will be upheld so long as narrowly tailored to effectuate a significant government interest. The two most important elements of narrow tailoring appear to be a time limit on the disability and ensuring that the disabling crimes are sufficiently related to the evils the city wishes to prevent.

The Ordinance before the court is sufficient on all counts. First, the disabling crimes in the Ordinance are all related to the secondary effects the city wishes to avoid. Second, the affected workers are not forever prohibited but can apply for a license after two years for a misdemeanor and five years for a felony. Mr. Haltom has previously and recently been convicted both of distributing obscenity and distributing pornography to a minor. While the issue here may be tinged with First Amendment concerns, the disability provision is really little different than numerous other provisions which prevent persons with criminal convictions from holding certain jobs.[86]

### 5. Application of the Ordinance

■ Having determined that the Ordinance withstands constitutional scrutiny, the sole issue left for the court is the state law issue of whether Doctor John's is a sexually oriented business as defined by the Ordinance. The City contends that Doctor John's fits within the category of "Adult Bookstore, Adult Novelty Store, Adult Video Store" defined in the ordinance as

[A] commercial establishment which has a *significant or substantial* portion of its stock-in trade or derives a significant or substantial portion of its reve-

---

**84.** *Dodger's Bar & Grill, Inc. v. Johnson County Bd. of County Com'rs,* 32 F.3d 1436, 1443 (10th Cir.1994).

**85.** *Pap's A.M.,* 529 U.S. at 289, 120 S.Ct. 1382.

**86.** *See e.g.,* Utah Code Ann. § 53A–6–405 (teachers may be denied license because of criminal convictions); Utah Code Ann. § 32A–4–103 (person convicted of enumerated crimes prohibited from obtaining restaurant liquor license); Utah Code Ann. § 36–11–103 (person convicted of enumerated crimes within previous five years prohibited from holding a lobbyist license); Utah Code Ann. § 4–38–10 (person convicted of a crime of moral turpitude prohibited from holding a race meet).

nues or devotes a significant or substantial portion of its interior business or advertising, or maintains a substantial section of its sales or display space to the sale or rental, for any form of consideration, of any one or more of the following:

1. Books, magazines, periodicals or other printed matter, or photographs, films, motion pictures, video cassettes, compact discs, slides, or other visual representations which are characterized by their emphasis upon the exhibition or description of specified sexual activities or specified anatomical areas;

2. Instruments, devices, or paraphernalia which are designed for use or marketed primarily for stimulation of human genital organs or for sadomasochistic use of abuse of themselves or others.

Doctor John's does not dispute that it sells the specified items. Rather, the dispute is over whether the items are a "significant or substantial" portion of its business.

Doctor John's suggested at oral argument that floor space creates the best yardstick for "significant or substantial." Doctor John's further insisted that if the City would simply declare what percentage of floor space constitutes "significant or substantial," it would immediately comply by reducing the amount of floor space devoted to the defined materials. Floor space as the sole measurement creates significant problems. Doctor John's could easily manipulate any specific percentage given by the city by simply increasing its floor space with other non-sexually oriented material—even material it had no intention of selling—or by simply taking the same sexually oriented material and repositioning it into a smaller area.

The City suggests that revenue is the best measure. However, using revenue as the sole measure is problematic as well.

For example, using revenue as a measure might cause a business to manipulate its prices to avoid classification as a sexually oriented business. More important, it seems intrusive to allow the City to investigate Doctor John's revenue—on a per item basis—simply to implement this Ordinance.

Were this court to rule on the issue at this time, it would likely find that Doctor John's is a sexually oriented business subject to the Ordinance. While the court has no evidence regarding advertising or revenue, according to Doctor John's own calculations, approximately twenty-five percent of its floor space is devoted to the defined materials. It is plausible that twenty-five percent of a business is a significant or substantial portion.

It would, however, be inappropriate for this court to answer this question at this time. Having resolved all of the federal questions before the court, the sole remaining issue is one of state law: Is Doctor John's covered by the Ordinance? The Ordinance sets forth detailed procedures for classification of businesses, including an administrative procedure and appeal to state courts of competent jurisdiction. These procedures should be applied in this case and state authorities should have the first opportunity at interpreting the Ordinance to determine whether Doctor John's is a sexually oriented business. Pursuant to 28 U.S.C. § 1367(c)(3), a federal court may decline to exercise supplemental jurisdiction over an issue of state law where "the district court has dismissed all claims over which it has original jurisdiction." [87] Having resolved all federal claims, the court hereby DENIES the City's motion for summary judgment that Doctor John's is a sexually oriented business. These matters are best left to be resolved by the appropriate state authorities under the

---

87. 28 U.S.C. § 1367(c)(3).

procedures—including procedures for judicial review—specified in the Ordinance.

## CONCLUSION

The City's Motion for Partial Summary Judgment requesting an injunction is hereby DENIED (# 26–1). Doctor John's Motion for Summary Judgment is hereby DENIED (# 31–1). The clerk of the court is directed to close the case.